KAISER FOUNDATION HEALTH PLAN OF MID–ATLANTIC STATES, INC., and Capital Area Permanente Medical Group, P.C., Appellants,

v.

Margaret M. ROSE, Appellee.

No. 89–1240.

District of Columbia Court of Appeals.

Argued Sept. 5, 1990.

Decided Nov. 13, 1990.

William O. Bittman, with whom John F. Dienelt, Alexander P. Starr, and Sheryl H. Lipman, Washington, D.C., were on the brief, for appellants.

Kenneth W. Curtis, Washington, D.C., for appellee.

Before BELSON, SCHWELB, and WAGNER, Associate Judges.

SCHWELB, Associate Judge:

Kaiser Foundation Health Plan of the Mid–Atlantic States (Kaiser) and Capital Area Permanente Medical Group (CAPMG) appeal from an order of the trial court, Honorable Richard S. Salzman presiding, denying their motion to dismiss a medical malpractice complaint filed by Margaret M. Rose in connection with the death of her late husband, Joseph Rose, allegedly as a result of appellants' negligence. *Rose v. Kaiser Found., et al.*, 117 Daily Wash.L. Rptr. 2101 (Super.Ct.D.C.1989). The motion was based on the doctrine of *forum non conveniens*, and appellants contended below, and now maintain in this court, that there was no significant nexus between this case and the District of Columbia. Because we agree that this action has substantial and virtually exclusive connections with Virginia but almost none with the District, we vacate the trial court's order and remand with directions to dismiss the action. The order of dismissal shall, however, be conditioned on a waiver in any action Mrs. Rose may bring in Virginia of any defense based on the Virginia statute of limitations, so long as Mrs. Rose proceeds with reasonable expedition to institute such an action in that jurisdiction.

I

The essential facts relevant to this appeal are undisputed. Kaiser is a District of Columbia corporation engaged solely in the business of operating a health maintenance organization (HMO). Kaiser offers health care services to its members in Virginia, Maryland and the District of Columbia, and does a majority of its business outside the District. CAPMG is a medical professional corporation with which Kaiser contracts to

provide physician services to persons enrolled in Kaiser.

On April 1, 1982, Joseph Rose, who lived in Alexandria, Virginia, enrolled in the Kaiser health plan through his employer, the National Lime Association. That company was based in Arlington, Virginia. Mr. Rose originally designated Kaiser's facility in Reston, Virginia as his primary medical center. He later transferred his designation to Falls Church, Virginia, when Kaiser opened a center in that community in 1985.

The complaint alleges that between February 22, 1988 and March 1, 1988, Mr. Rose visited Kaiser's Falls Church medical center on three occasions, complaining of severe back pain. Three CAPMG–affiliated physicians, all licensed by and practicing in Virginia, treated him on an outpatient basis. On March 1, 1988, Mr. Rose collapsed and died in Virginia from a ruptured abdominal aortic aneurysm. Mrs. Rose claims that her husband's death was caused by the failure of three Virginia physicians to examine, diagnose, treat and advise him properly.

Mrs. Rose continues to live in Alexandria, Virginia. The sole connection between the District and the events which precipitated this lawsuit is that Kaiser and CAPMG are incorporated in the District of Columbia.

On May 17, 1989, Mrs. Rose filed her complaint in the Superior Court, alleging medical malpractice by Kaiser and CAPMG. She grounded her action on the District's wrongful death and survival statutes. D.C.Code §§ 16–2701, *et seq.*, 12–101, *et seq.* (1989). Kaiser and CAPMG filed a Motion to Dismiss on Forum Non Conveniens Grounds or Partially Dismiss for Failure to State a Claim. Judge Salzman dismissed the wrongful death claim, but declined to invoke the doctrine of *forum non conveniens* to dismiss the entire complaint. The judge recognized that this litigation has a far greater connection with Virginia than with the District,[1] but reluctantly[2] denied appellants the relief they sought because he believed he was required to do so by this court's decision in *Kaiser–Georgetown Community Health Plan, Inc. v. Stutsman,* 491 A.2d 502 (D.C. 1985) (*"Stutsman I"*). In that case, this court affirmed the denial of a motion to dismiss, on *forum non conveniens* grounds, a medical malpractice action brought by a Virginia resident who worked in the District of Columbia and who had obtained Kaiser coverage through her District of Columbia employer, primarily on the ground that District of Columbia law would apply. Kaiser and CAPMG now appeal, contending that the motion to dismiss ought to have been granted.[3]

1. "With the exception of the 'choice-of-law' question, there can be little debate that Virginia has more significant contacts with this litigation than the District of Columbia. The plaintiff and decedent, her husband, resided there; decedent was employed in Virginia by a Virginia firm; the Kaiser–Permanente health benefits were provided to him by that firm; decedent, his employer and Kaiser–Permanente all contemplated that medical services would be rendered by Kaiser–Permanente in Virginia; the alleged malpractice occurred in Virginia; virtually all the witnesses (with the possible exception of expert witnesses) reside in Virginia and are amenable to Virginia process; and any judgment obtained in that jurisdiction would be enforceable in that jurisdiction as well as this one."
117 Daily Wash.L.Rptr. at 2106.

2. The judge wrote that his denial of the motion to dismiss would "produce the following result: Although the plaintiff, her deceased husband, and the purportedly negligent physicians all resided and worked in Virginia, where all concerned intended medical benefits be provided decedent, and the decedent was in fact treated and the malpractice is said to have transpired in that State, nevertheless the case will be decided under District of Columbia law because Kaiser and CAPMG are incorporated here, even though the complaint involves nothing relating to defendants' corporate status.... Unless this Court is mistaken, the dockets of this forum can anticipate a further influx of similar cases involving allegations of malpractice by Virginia physicians at Kaiser–Permanente's Virginia facilities on Virginia residents. Perhaps Mr. Bumble was right."
117 Daily Wash.L.Rptr. at 2106–07.

3. Judge Salzman's order is appealable under the law of the District of Columbia. *Dunkwu v. Neville,* 575 A.2d 293, 294 n. 1 (D.C.1990); *cf. Van Cauwenberghe v. Biard,* 486 U.S. 517, 527–30, 108 S.Ct. 1945, 1952–54, 100 L.Ed.2d 517 (1988).

## II

The doctrine of *forum non conveniens* is a part of the statutory law of the District of Columbia.

> When any District of Columbia court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss such civil action in whole or in part on any conditions that may be just.

D.C.Code § 13–425 (1989). The word "may" is permissive rather than mandatory, and

> [d]ecisions on questions of *forum non conveniens* are committed to the sound discretion of the trial court and will be upset on appeal only upon a clear showing of an abuse of that discretion.... This broad discretion is not unlimited, however, and this court must examine the trial court's action in light of the well-established criteria for applying the doctrine of *forum non conveniens.*

*Carr v. Bio–Medical Applications of Washington, Inc.,* 366 A.2d 1089, 1091–92 (D.C.1976) (citations omitted). These criteria include the various "private" and "public" factors enumerated in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) and *Jenkins v. Smith,* 535 A.2d 1367, 1369–70 (D.C. 1987) (en banc).

In the present case, the pertinent private interest factors include (1) plaintiff's choice of forum; (2) the convenience of parties and witnesses; (3) the ease of access to sources of proof; (4) the availability and cost of compulsory process; and (5) the enforceability of any judgment obtained. The public interest factors include: (1) the clearance of foreign controversies from congested dockets; (2) the adjudication of disputes in the forum most closely linked thereto, and (3) the avoidance of saddling courts with the burden of construing a foreign jurisdiction's law. *Jenkins, supra,* 535 A.2d at 1369–70.

In *Dunkwu, supra,* 575 A.2d at 293, this court recently had occasion to apply these factors to a situation which closely parallels the present one. In that case, a Virginia resident brought suit in our Superior Court for medical malpractice allegedly committed in Virginia against her infant daughter by a physician licensed both in Virginia and in the District. The plaintiffs were never seen, examined or treated in the District of Columbia. The trial court denied the defendant's motion to dismiss, but this court reversed, holding that the doctrine of *forum non conveniens* should have been invoked because otherwise "a motion of this kind [could] be defeated by a showing of very little more than that the plaintiff chose the courts of the District of Columbia as her forum." *Id.* at 294. Following a discussion of the traditional "private" and "public" factors, *id.* we held that

> [w]here it is shown that neither party resides in the District and the plaintiff's claim has arisen in another jurisdiction which has more substantial contacts with the cause of action, ... the trial court will have abused its discretion in denying a motion to dismiss on grounds of *forum non conveniens* unless that choice rests upon the sure factual foundation of an affirmative showing by the plaintiff of some reasonable justification for his institution of the action in the forum state.

*Id.* at 295 (citations and internal quotation marks omitted). We further held that substantially less deference is accorded to the plaintiff's choice of forum when the plaintiff resides in another jurisdiction, for it is much less reasonable to assume under such circumstances that the District of Columbia was selected because it is a convenient forum. *Id.* at 294–95. We distinguished *Stutsman I,* on which the plaintiff in *Dunkwu,* like Mrs. Rose here, placed her principal reliance, on the ground that the plaintiff in *Stutsman I* was employed in the District and the relationship between the parties

> [could] be described as centering around the District of Columbia, since the agreement to provide health care was a benefit of the plaintiff's District employment.

*Id.* at 296 (quoting *Stutsman I, supra,* 491 A.2d at 508).[4]

---

**4.** In *Smith v. Kaiser Found. Health Plan of the* *Mid–Atl. States, Inc.,* 118 Daily Wash.L.Rptr.

Mrs. Rose seeks to distinguish *Dunkwu* on the ground that appellants in this case are District of Columbia corporations, and that the District's interest in assuring that health care providers based in the District pay for all the damage caused by their malpractice, without the imposition by Virginia of a "cap" on the plaintiffs' recovery,[5] outweighs Virginia's interest in the case. We do not agree. If the alleged malpractice had been committed by a Virginia corporation which also does business in the District, (rather than by a District Corporation which does most of its business outside the District), then there would be no doubt whatever that Virginia would be the appropriate forum, that Virginia law would apply, and that Mrs. Rose's recovery would be limited by Virginia's $1,000,000 statutory ceiling. We do not think the District has a substantial interest in assuring that a District of Columbia corporation pay more damages than a similarly situated Virginia corporation for the same conduct in Virginia *vis-a-vis* a resident of that State. *See generally Hercules & Co. v. Shama Restaurant Corp.*, 566 A.2d 31, 41–42 (D.C. 1989); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971). Indeed, if the District has a stake in the matter at all, it is to assure that its citizens and corporations are not treated more harshly than their Virginia counterparts. "Virginia's interest in regulating the health care industry for the benefit of its citizens outweighs the interest of the District of Columbia in holding its corporate citizens liable for the full extent of negligence occurring in Virginia." *Packer v. Kaiser Found. Health Plan of the Mid–Atl. States, Inc.*, 728 F.Supp. 8, 11 (D.D.C.1989); *see also Ott v. Kaiser–Georgetown Community Health Plan, Inc.*, 689 F.Supp. 9, 12–13 (D.D.C.1988), and Judge Sullivan's opinion in *Smith, supra.*

We think that *Dunkwu*, which had not been decided when Judge Salzman denied appellants' motion,[6] controls this case and requires us to vacate the decision below. Our conclusion is further bolstered by the above-cited trial court decisions predating *Dunkwu*, which all reached a similar result.

With the exception of the plaintiff's choice of forum—a comparatively minor factor in the case of a nonresident plaintiff, *Dunkwu, supra,* 575 A.2d at 294–95—the "private factors" tend to favor Virginia as a forum, since the plaintiff, the doctors, and the medical records are all located there,[7] and since the defendants likewise have a substantial presence in the State. So far as the "public" factors are concerned, we agree with Judge Sullivan that trial in the Superior Court

> would be unwise and unfair to the citizens of the District of Columbia to clog the crowded dockets of our courts with this imported litigation.... Moreover,
>
> [t]he Court would blink reality were it to believe that plaintiff's choice of this forum is related to the brilliance of its bench or its reputation for rapid resolution of litigation. Rather, it is the possibility of a significantly larger recovery that brings plaintiff here.

2105, 2108 (Super.Ct.D.C.1990), a case which Mrs. Rose concedes to be indistinguishable from this one but claims to have been incorrectly decided, Judge Emmet Sullivan wrote that the important distinctions between the facts in *Stutsman I* and the instant case are that the non-resident plaintiff in *Stutsman I,* unlike the plaintiff herein, was a member of the District workforce and selected her health plan as a benefit of employment. Since these factors were crucial to the *Stutsman I* decision to retain jurisdiction and apply District law, but are absent in the instant case, this Court should have no interest in this controversy.

5. The Virginia legislature has imposed a ceiling of one million dollars on the amount that may be recovered in a medical malpractice action. 2 Va.Code § 801–581.15 (Michie Supp.1984). There is no such limit in the District. Judge Salzman remarked in his written opinion in this case, 117 Daily Wash.L.Rptr. at 2106, that

6. The obvious reluctance with which Judge Salzman countenanced plaintiff's patent forum-shopping on the basis of *Stutsman I* suggests that he would almost certainly have granted the motion to dismiss if *Dunkwu* had been decided earlier.

7. We note, however, that any inconvenience to parties and witnesses would surely be marginal, since we are dealing here with a "relatively compact and closely interrelated metropolitan area." *Aiken v. Lustine Chevrolet, Inc.*, 392 F.Supp. 883, 887 n. 20 (D.D.C.1975); *see also Dunkwu,* 575 A.2d at 294.

in matters of this kind, plaintiffs from other jurisdictions should ... resort to their own courts: the courts of the District of Columbia, burdened as they are, should not without good reason be asked to make inquiry concerning events happening outside their jurisdiction.

*Smith, supra*, 118 Daily Wash.L.Rptr. at 2108 (citations and internal quotation marks omitted). So far as the choice-of-law issue is concerned, we think that Virginia law would apply even if the case were tried here. *Dunkwu, supra*, 575 A.2d at 296; *Hercules, supra*, 566 A.2d at 41–42. Moreover, the avoidance of unnecessary problems in the conflict of laws is itself an "important public interest in *forum non conveniens* analysis." *Dunkwu, supra*, 575 A.2d at 296 (citation omitted).

The effect of permitting Mrs. Rose to litigate in the District and to invoke District law in a suit with virtually no link to this jurisdiction would be to avoid the limits which Virginia places on recovery in Virginia medical malpractice actions. One of the purposes of the doctrine of *forum non conveniens* is to prevent forum-shopping. *Schmid Laboratories, Inc. v. Hartford Accident & Indem. Co.*, 654 F.Supp. 734, 736–37 (D.D.C.1986). That purpose would be ill-served if we were to sustain Mrs. Rose's contentions in this case.

### III

On January 9, 1990, after this appeal was noticed, the trial judge signed an order which included the following paragraph:

Pursuant to the representations of defendants' counsel at the pretrial conference, defendants will not raise a statute of limitations defense if this action must be rebrought in Virginia by virtue of the Court of Appeals' decision on the *forum non conveniens* appeal; plaintiff therefore need not file a duplicate suit in Virginia on this cause of action merely to toll the running of the statute.

Kaiser's regional counsel nevertheless advised Mrs. Rose's attorney by letter of March 23, 1990 that he had not agreed to an "unlimited" waiver of the statute of limitations. Counsel's letter concluded that

Kaiser and CAPMG will agree to continue to waive any statute of limitations defense they have available under Virginia law only up to and including April 2, 1990.

Counsel for plaintiff did not respond to this communication. To require the plaintiff to sue and presumably to begin to litigate in Virginia while her suit in the District remained pending, however, would be potentially duplicative and wasteful and incompatible with "good judicial husbandry." *United States v. Dogan*, 314 F.2d 767, 772 (5th Cir.1963).

A prerequisite for application of the doctrine of *forum non conveniens* is the availability of an alternative forum in which plaintiff's action may more appropriately be entertained. *Gilbert, supra*, 330 U.S. at 506–07, 67 S.Ct. at 842; *Mills v. Aetna Fire Underwriters Ins. Co.*, 511 A.2d 8, 13 (D.C.1986). Here, as in *Mills*, "[c]onditional dismissal is particularly advisable ..." *Id.* at 15. Accordingly, we vacate the trial court's order denying appellants' motion to dismiss and remand the case to the trial court for the entry of an order conditionally dismissing the complaint as directed by this court in *Mills*. *Id.* at 15–16.

*So ordered.*