Leslie S. AUERBACH, et al., Appellants,

v.

Arthur J. FRANK, et al., Appellees.

Nos. 95–CV–32, 95–CV–620.

District of Columbia Court of Appeals.

Argued Oct. 30, 1996.
Decided Nov. 21, 1996.

Luiz R.S. Simmons, Camp Springs, MD, for appellants.

Arthur J. Frank, with whom Paul D. Pearlstein, Washington, DC and Michael D. Breads, Silver Springs, MD, were on the brief, for appellees.

Before SCHWELB, FARRELL, and RUIZ, Associate Judges.

FARRELL, Associate Judge.

No. 95–CV–32, an appeal from an injunctive order, requires us to consider under what circumstances a trial judge may enjoin a party *pendente lite* from pursuing related litigation in the courts of another state that also has jurisdiction over the subject matter.

The consolidated appeal, No. 95–CV–620, is an interlocutory appeal from the denial of a motion to dismiss on grounds of *forum non conveniens.*[1] We reverse the order in No. 95–CV–32 and affirm in No. 95–CV–620.

## I. No. 95–CV–32 (Anti-suit Injunction)

### A. Factual Background

This interlocutory appeal arises from a suit filed by the plaintiffs Arthur Frank and Michael Breads, operating as the law firm Frank & Breads (hereafter "the plaintiffs"), against the defendants Leslie Auerbach and Luiz Simmons, operating as the law firm Auerbach & Simmons (hereafter "the defendants"), seeking damages for the defendants' alleged breach of contract. Two contracts form the basis of the dispute. Originally, the defendants entered into a co-counseling agreement with Hyatt Legal Services (Hyatt), a national law firm, under which Auerbach & Simmons would provide legal services on a contingent fee basis for personal injury, worker's compensation, and disability cases referred to them by Hyatt. According to the contract, the defendants would remit to Hyatt fifty percent of any attorney's fees received from successful cases.

The second contract (actually a pair of contracts) was between Hyatt and the plaintiffs, whereby the latter assumed ownership of Hyatt's offices in Rockville and Silver Spring, Maryland, and its Farragut Square office in the District of Columbia. The agreements, as alleged in the complaint, transferred to the plaintiffs all assets including accounts receivable that belonged to these offices. Thereafter, the plaintiffs handled their own personal injury and worker's compensation cases and stopped referring cases to Auerbach & Simmons.

The present suit involves the proper disposition of fees from cases referred to the defendants before the transfer of ownership to the plaintiffs and termination of the co-counseling agreement. The plaintiffs, as the assignees of Hyatt, filed this action for breach of contract on September 30, 1994.

---

1. Our jurisdiction in No. 95–CV–32 is based upon D.C.Code § 11–721(a)(2)(A) (1995). The order in No. 95–CV–620 is appealable under our previous decisions. *See Dunkwu v. Neville,* 575 A.2d 293, 294 n. 1 (D.C.1990).

The defendants answered and moved to dismiss the suit for failure to state a cause of action. On November 1, 1994, the defendants filed an action for declaratory judgment in Maryland against Hyatt requesting a declaration of Hyatt's right *vel non* to receive fees from cases litigated under the co-counseling agreement, the defendants contending that Hyatt (and presumably its assignee) had "abandoned" any right to such fees. The defendants did not name the plaintiffs as defendants in the Maryland action.

The plaintiffs in turn filed a motion in Superior Court to enjoin the defendants from proceeding with the Maryland declaratory judgment action. By written order dated January 6, 1995, Judge Mize granted the injunction. He reasoned that although "parallel proceedings ... should ordinarily be allowed to proceed simultaneously," antisuit injunctions are permissible to avoid "an irreparable miscarriage of justice" (quoting *Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 235 U.S.App. D.C. 207, 224–25, 731 F.2d 909, 926–27 (1984)), and that here "notions of fairness and reasonableness dictate that defendants ... be enjoined from prosecuting the Maryland action." First and "[m]ost obviously," the judge explained, "the two cases arise out of the same origin." Second, the issue raised in the Maryland action, the survival of the co-counseling contract, would necessarily arise in the District proceeding as an affirmative defense. Third, permitting the defendants to prosecute the Maryland action would work a hardship on the plaintiffs by forcing them to intervene in that action and file a counterclaim consisting of claims already asserted in the District lawsuit. "This unreasonable and needless hardship" alone, the judge found, "warrants granting the antisuit injunction." Finally, "the Maryland action unnecessarily creates multiplication of litigation, thereby wasting judicial and party resources and risking inconsistent adjudications."

## B. Legal Discussion

Although this court has not addressed the issue, the general authority of trial courts to issue antisuit injunctions appears well established. *See Cole v. Cunningham,* 133 U.S. 107, 10 S.Ct. 269, 33 L.Ed. 538 (1890); 43A C.J.S. *Injunctions* § 59, at 48 (1978) ("Generally, under proper equitable circumstances, a court may enjoin parties within its jurisdiction from prosecuting actions in other states or foreign countries, where sufficient grounds for granting such relief exist."). The District of Columbia Circuit has confirmed this authority in the context of intrafederal litigation, *e.g., Food Fair Stores v. Square Deal Market Co.,* 88 U.S.App. D.C. 176, 187 F.2d 219 (1951), and international litigation. *Laker Airways, supra.* But while the authority to issue antisuit injunctions is well settled, the exceptional nature of the remedy has caused courts to inquire closely into whether adequate grounds for the relief existed in particular cases.

Decisions that involve injunctions affecting courts within the judicial system of a single sovereign, *e.g.,* as between different federal courts,[2] have limited relevance to our case. More apposite are cases such as *Laker Airways,* in which federal courts have been asked to enjoin the pursuit of court proceedings in other countries. Since the federal court of appeals in this jurisdiction dealt comprehensively with the issue in *Laker Airways,* we look first to the standards developed in that case.

Laker Airways had filed an antitrust action in the United States District Court against domestic, British, and other foreign airlines. The foreign airlines then sued in the United Kingdom and won a permanent injunction ordering Laker to dismiss its action against the British airlines. To keep the American defendants from obtaining similar relief in that action, Laker sought an injunction in the United States District Court barring the defendants "from taking part in the foreign action designed to prevent the district court from hearing Laker's antitrust claims." 235 U.S.App. D.C. at 213, 731 F.2d at 915. The District Court granted the injunction as nec-

---

**2.** *See, e.g., Columbia Plaza Corp. v. Security Nat'l Bank,* 173 U.S.App. D.C. 403, 525 F.2d 620 (1975).

essary to safeguard its jurisdiction over the litigation.

The court of appeals ultimately affirmed on this ground, but established standards that emphasized the extraordinary nature and limited availability of the remedy. The fundamental rule is that, when concurrent jurisdiction exists, "each forum is ordinarily free to proceed to a judgment." *Id.* at 224, 731 F.2d at 926. Thus, although the power of courts "to control the conduct of persons subject to their jurisdiction to the extent of forbidding them from suing in foreign jurisdictions" is well settled,

> the fundamental corollary to concurrent jurisdiction must ordinarily be respected: parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other. The mere filing of a suit in one forum does not cut off the preexisting right of an independent forum to regulate matters subject to its prescriptive jurisdiction.

*Id.* at 224–25, 731 F.2d at 926–27 (footnotes omitted). Accordingly, since the effect of an injunction is to "restrict the foreign court's ability to exercise its jurisdiction," which may invite reciprocal action in kind, "only in the most compelling circumstances does a court have discretion to issue an antisuit injunction." *Id.* at 225, 731 F.2d at 927. The test in each case is whether "the injunction is required to prevent an irreparable miscarriage of justice." *Id.* Specifically, while injunctions may be "necessary to protect the jurisdiction of the enjoining court, or to prevent the litigant's evasion of the important public policies of the forum," *id.*, they should not be issued for lesser reasons, especially when requested before a judgment in the forum jurisdiction:

> Some courts issue the injunction when the parties and issues are identical in both actions, justifying the injunction as necessary to prevent duplicative and, therefore, "vexatious" litigation. However, this rationale is *prima facie* inconsistent with the rule permitting parallel proceedings in concurrent in personam actions. The policies underlying this rule—avoiding hard-

> ship to parties and promoting the economies of consolidated litigation—are more properly considered in a motion for dismissal for *forum non conveniens.* They do not outweigh the important principles of comity that compel deference and mutual respect for concurrent foreign proceedings. Thus, the better rule is that duplication of parties and issues alone is not sufficient to justify issuance of an antisuit injunction.
>
> Similarly, the possibility of an "embarrassing race to judgment" or potentially inconsistent adjudications does not outweigh the respect and deference owed to independent foreign proceedings.

*Id.* at 226–27, 731 F.2d at 928–29 (footnotes omitted).

As a leading decision on the subject, *Laker Airways* has been construed to hold that the only proper grounds on which a foreign antisuit injunction may be issued are (1) to protect the forum's jurisdiction, and (2) to prevent evasion of the forum's important public policies. *See, e.g., Gau Shan Co. v. Bankers Trust Co.,* 956 F.2d 1349, 1354 (6th Cir.1992); *China Trade & Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 36–37 (2d Cir.1987). If we apply these grounds to the present domestic suit, then it is clear that the injunction was wrongly issued. The Maryland action, if pursued simultaneously, will not divest the Superior Court of jurisdiction. Allowing the defendants to proceed with it (surmounting any motions to dismiss or stay those proceedings) would lead at worst to a situation where the plaintiffs confront a prior Maryland judgment which is then pled in the current action as res judicata on the issue of whether the co-counseling contract survived the transfer of Hyatt's interest to the plaintiffs. But, as *Laker Airways* pointed out, this is a natural consequence of parallel proceedings in courts with concurrent jurisdiction, and not reason for an injunction. 235 U.S.App. D.C. at 224–25, 731 F.2d at 926–27. Nor have the plaintiffs cited any important (indeed, any) public policies of the District of Columbia that the defendants would frustrate by simultaneously pursuing declaratory relief in Maryland; at bottom this is a garden-variety suit over the terms of, and actions related to, a contract. The specific reasons cited by the trial judge

for issuing the injunction—fairness and hardship to the plaintiffs, the same controversy and issues, and duplication of actions and possible inconsistent judgments—were all rejected by *Laker Airways* as insufficient to allow interference with the foreign court's exercise of concurrent jurisdiction.

The plaintiffs correctly observe, however, that *Laker Airways* analyzed the propriety of antisuit injunctions in the delicate setting of international comity. Thus, while sustaining the injunction there as "imperative to preserve the [United States District C]ourt's jurisdiction," *id.* at 254, 731 F.2d at 956, the court was sensitive to "the crucial principles of comity that regulate and moderate the social and economic intercourse between independent nations." *Id.* at 235, 731 F.2d at 937.[3] The present case arises in a less diplomatically-charged setting. And yet, not surprisingly, considerations of respect for the concurrent jurisdiction of another sovereign have induced a similarly restrictive view of the availability of the injunctive remedy among the better-reasoned state court decisions on the subject.

Echoing *Laker Airways'* standard that an antisuit injunction is warranted only "to prevent an irreparable miscarriage of justice," *id.* at 225, 731 F.2d at 927, these state courts hold that the power "should be exercised 'sparingly, not capriciously, and not unless a clear equity is presented requiring the interposition of the court to prevent manifest wrong and injustice.'" *Tennessee Farmers Mut. Ins. Co. v. Wheeler,* 170 Ga.App. 380, 317 S.E.2d 269, 271 (1984) (citations omitted); *see also, e.g., Childress v. Johnson Motor Lines, Inc.,* 235 N.C. 522, 70 S.E.2d 558, 565 (1952) (same). Comity considerations figure strongly in these decisions. In *E.B. Latham & Co. v. Mayflower Indus.,* 278 A.D. 90, 103 N.Y.S.2d 279 (1951), for example, the court stated:

> The general rule is that the courts of this state will decline to interfere by injunction to restrain its citizens from proceeding in an action commenced in the courts of a sister state. It is only in

extreme and extraordinary cases that the court will break the rule of comity which forbids the granting of an injunction to stay proceedings which have been commenced in a foreign court of competent jurisdiction.

*Id.,* 103 N.Y.S.2d at 282. Narrow exceptions to the rule include suits brought in bad faith or for the purpose of "vexing or harassing the party seeking the injunction," or where the suit is motivated by fraud or seeks to evade the law of the parties' domicile. *Id.* But "the necessity of equitable interference to prevent a failure of justice [must be] clearly established." *Id. See also Roman v. Sunshine Ranchettes, Inc.,* 98 A.D.2d 744, 469 N.Y.S.2d 449, 450–51 (1983).

Similarly, in *Total Minatome Corp. v. Santa Fe Minerals, Inc.,* 851 S.W.2d 336 (Tex.Ct. App.1993), the court reasoned that "[t]he principle of comity existing between sovereign governments requires courts to exercise their equitable power of injunction sparingly and only in special circumstances." *Id.* at 339. The party seeking an injunction "must show a clear equity demand[ing] the ... court's intervention to prevent manifest wrong and injustice." *Id.* That showing requires proof, *inter alia,* of "irreparable injury," which is not made out simply by the plaintiff's being "'forced to defend itself in [another state] and subject itself to multiple courts ruling upon the same issues.'" *Id.* Although "[e]quity unquestionably permits an injunction to prevent a multiplicity of suits," *id.,* "[a] single, concurrent action proceeding parallel with another lawsuit does not constitute as a matter of law a multiplicity of suits depriving a party of an adequate remedy at law." *Id.* at 340. Maintenance of parallel proceedings may be expensive and result in conflicting rulings, *id.;* but "if additional expense were sufficient reason to grant an injunction, then an injunction would be proper in every case involving more than one action," *id.* at 340–41, and "if the mere possibility of conflicting rulings ... were a reason to grant an injunction, the principle of comity would become meaningless," *id.* at 341. The

---

**3.** Judge Starr, dissenting, believed "that principles of comity among the courts of the international community counsel strongly against the injunction in the form issued here." 235 U.S.App. D.C. at 254, 731 F.2d at 956.

case for injunction becomes stronger, on the other hand, "if the [foreign state] action constitutes vexatious litigation or is brought for the purpose of harassment." *Id.* at 340.

Finally, in *Roberts Realty of the Bahamas, Ltd. v. Miller & Solomon (Bahamas), Ltd.,* 234 So.2d 417 (Fla.Dist.Ct.App.1970), the Florida trial court had granted an injunction as to an action brought in the Bahamas because the latter "amounted to a relitigation of the issues." *Id.* at 418. The court of appeals reversed, concluding that antisuit injunctions are proper only "where irreparable harm will result to the movant from a denial of the [injunctive] relief sought," but that when no such harm is threatened, "the principle of comity [governs]." *Id.* As the injunction in that case was "not absolutely necessary to protect any interest of this state," it was improperly issued. *Id. See also Poller v. First Virginia Mortgage & Real Estate Inv. Trust,* 367 So.2d 1082, 1083 (Fla.Dist.Ct.App. 1979) (citing *Roberts Realty* as controlling precedent in sustaining refusal to grant interstate injunction).

We agree with these decisions that an injunction prohibiting a party from bringing suit concurrently in another state with jurisdiction over the matter bears a very heavy burden of justification. Proper respect for the courts of the other sovereign state, as well as prevention of the risk that "if one [court] may enjoin, the other may retort by injunction, and thus the parties be without remedy," *Peck v. Jenness,* 48 U.S. (7 How.) 612, 625, 12 L.Ed. 841 (1849), teach that only in "extraordinary cases" should the remedy be available, *E.B. Latham & Co.,* 103 N.Y.S.2d at 282, those cases where it is needed "to prevent manifest wrong and injustice," *Total Minatome,* 851 S.W.2d at 339. The paradigms discussed in *Laker Airways* are two such situations: preservation of the forum court's jurisdiction or of definable important public policies. Also, a convincing demonstration that the suit was brought in bad faith or to "vex[ ] or harass[ ] the party seeking the injunction," *E.B. Latham & Co.,* 103 N.Y.S.2d at 282, may justify intervention.

But the decisions discussed above admonish, and we now hold, that concerns such as duplication of parties and issues, the expense and effort of simultaneous litigation in two courts, and the danger of a race to judgment and inconsistent adjudications, ordinarily will not be grounds to restrain a party from proceeding with a suit in a court having jurisdiction of the matter. As the *Laker Airways* court recognized, these concerns are better addressed through motions in the other court to stay or dismiss the proceedings, such as on grounds of *forum non conveniens.*

Applying these necessarily somewhat general standards, we conclude that the trial judge abused his discretion in this case. In their motion for injunctive relief, plaintiffs made the conclusory assertion that the Maryland complaint constituted " 'forum shopping' by the Defendants and [was] designed to harass the Plaintiffs." But in granting the injunction the judge made no finding to this effect; and though, in denying the defendants' later motion for a stay of the injunction, he adverted to the "red flag" of forum shopping "impl[ied]" by their claim of prejudice in having to litigate in the District of Columbia, this cannot substitute for a finding by clear and convincing evidence that the Maryland action was brought with the intent to harass the plaintiffs.[4] Beyond this, the reasons cited by the judge were precisely those we have concluded are insufficient to support an injunction absent exceptional circumstances not shown to be present here. Our concern that an antisuit injunction truly be a measure of last resort designed to avert manifest injustice requires the plaintiffs to bring any such considerations of hardship, duplication of time and expense, and inconsistent judgments to the attention of the Maryland court in motions for appropriate relief.

## II. No. 95–CV–620 (*forum non-conveniens* )

### A. Factual Background

The defendants moved to dismiss the suit on grounds of *forum non conveniens.*

---

4. We therefore have no reason to consider the defendants' argument that the judge could not properly make such a finding, or enter an injunc-

tion generally, without holding an evidentiary hearing.

They pointed out that the individual plaintiffs and defendants all reside in Maryland, and argued that the acts and events that were the subject of the suit occurred chiefly in Maryland. Their supporting memorandum in the trial court and brief on appeal are the same in specifying these "contacts" as follows:

(1) the co-counseling agreement between the defendants and Hyatt, upon which the suit was based, was wholly negotiated in Montgomery County, Maryland;

(2) the case files referred to the defendants by Hyatt were received and reviewed in Montgomery County, Maryland; the management of cases was performed by the defendants in Montgomery County, Maryland; and all but a very few client interviews took place in the defendants' Montgomery County, Maryland offices;

(3) four of the five Hyatt offices from which the defendants received case files were located in Maryland, meaning that "the vast majority of case files received, reviewed, and accepted by the [defendants] originated in Maryland offices and concerned Maryland residents"; and,

(4) all discussions between the defendants and Hyatt "concerning the status of cases, case management, training, and other client matters" occurred in Montgomery County, Maryland.

The plaintiffs responded below that, to the contrary, "the vast majority" of the cases referred to the defendants under the co-counseling agreements originated in the Farragut Square office of Hyatt—119 cases, as compared to 27 originating from Hyatt's Rockville office and 22 from its Silver Spring office. These figures were supported by an attachment to the complaint listing the name of each client referred to the defendants from the respective Hyatt office and the date of each referral. The plaintiffs also asserted that their claims arose under District of Columbia law since the original co-counseling agreement was made with the D.C. office of Hyatt Legal Services. The trial court (Judge Alprin) denied the motion to dismiss.

Besides accepting the plaintiffs' numerical showing for purposes of the motion, he was not convinced that either "an analysis of the private and public factors" or the fact that Maryland law would apply to certain issues made the District an inconvenient forum.

## B. Legal Discussion

We have repeatedly held that trial court rulings on *forum non conveniens* motions are entitled to receive considerable deference from this court. We will not reverse such a ruling unless presented with clear evidence that the trial court abused its broad discretion.

*Jenkins v. Smith,* 535 A.2d 1367, 1369 (D.C. 1987) (en banc). *See Smith v. Alder Branch Realty Ltd. Partnership,* 684 A.2d 1284 (D.C. 1996). Relevant to the trial court's determination are the various "private" and "public" factors enumerated in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). *See, e.g., Kaiser Found. Health Plan v. Rose,* 583 A.2d 156, 158 (D.C.1990). The ultimate question, however, is essentially a practical one: "whether the District has so little to do with this case that its courts should decline to hear it." *Jenkins,* 535 A.2d at 1371. The burden of establishing this proposition is on the movant. *Mills v. Aetna Fire Underwriters Ins. Co.,* 511 A.2d 8, 10 (D.C.1986).

The defendants contend that they are already part way to meeting that burden since it is conceded that none of the parties to the suit reside in the District. *See Dunkwu v. Neville,* 575 A.2d 293, 294–95 (D.C.1990). But even so, the defendants concede they must demonstrate that the plaintiffs' "claim has arisen in another jurisdiction which has more substantial contacts with the cause of action" than does the District, *Mills,* 511 A.2d at 11; for only then do our decisions shift the obligation to the plaintiffs to show "some reasonable justification for [their] institution of the action in the forum state." *Id.* (citations omitted). *See also Dunkwu,* 575 A.2d at 295; *Rose,* 583 A.2d at 158. The defendants have not met their burden.

The number of referrals originating in the respective Hyatt offices owned by the plain-

tiffs reveals little if anything about where the plaintiffs' claim arose or the extent of the District's connection to it. The plaintiffs claim a share of attorney's fees derived from the co-counseling agreement, fees based not on referrals but on settlements or damage awards in favor of clients represented by the defendants in suits actually filed. The more relevant evidence, therefore, would have shown the jurisdictions in which the suits were filed that led to settlements or damage awards, and the monetary amounts obtained in each. That information also would have shed light on the location of likely witnesses at the trial of this case. The defendants offered no evidence on this point, however. Instead they merely "estimate," without support, "that of the several hundreds of case files received and reviewed by [the defendants], less than 10 cases involved litigation in the District of Columbia." Without knowing more about the amounts, if any, recovered in the cases in both jurisdictions,[5] the trial judge could make no intelligent assessment of the substantiality of Maryland's "contacts" with the plaintiffs' claim.

The defendants discuss some of the private and public factors listed in *Gulf Oil Corp., supra,* in support of dismissal, but their showing fails to convince us that the trial court abused its discretion. Although they complain, for example, that it will be difficult and costly to obtain compulsory process for the many Maryland residents they intend to call as witnesses, they give no specifics as to the identities or places of residence of these witnesses, or any sound reason why the processes of the Superior Court cannot secure their appearance. *See* Super. Ct. Civ. R. 45(b)(2) (1996) (subpoena may be served anywhere outside the District of Columbia "that is within 25 miles of the place of the hearing or trial"). And, as we stated in *Rose, supra,* "[A]ny inconvenience to parties and witnesses would surely be marginal, since we are dealing here with a 'relatively compact and closely interrelated metropolitan area.'" 583 A.2d at 159 n. 7 (citation omitted). The defendants' further assertion that they will meet legal difficulties under District law in

joining Hyatt, a general partnership, to avoid possible preclusion issues, is moot since they admit they would pursue this course only if we sustained the injunction against their Maryland declaratory action. Finally, at this stage of the proceedings, where the substantive issues in dispute have scarcely been developed, we are justifiably skeptical of the defendants' argument that issues "of first impression" under Maryland law will govern the case, or that a Superior Court judge, "not unfamiliar with the law of Maryland," *Asch v. Taveres,* 467 A.2d 976, 979 (D.C.1983), would be unable to decide them correctly.

### III.

We reverse the order in No. 95–CV–32, affirm the order in No. 95–CV–620, and remand for further proceedings.

*So ordered.*

case tried in the District of Columbia.

---

5. The plaintiffs, for their part, point out that by far the greatest damage award was received in a