Wherefore, the judgment of the trial court is

*Affirmed.*

**J.J., Appellant,**

v.

**B.A.,\* Appellee.**

**No. 11–FM–1309.**

District of Columbia Court of Appeals.

Argued Jan. 17, 2013.

Decided April 18, 2013.

---

\* Although not required to do so in this case, we have used initials for the parties, rather than their full names, primarily to protect the privacy of their son, Z.A., who was a minor at the time the relevant events occurred. *See P.F. v. N.C.,* 953 A.2d 1107 (D.C.2008) (using initials for similar reasons).

J.J., pro se.

B.A., pro se.

Before BLACKBURNE–RIGSBY and McLEESE, Associate Judges, and SCHWELB, Senior Judge.

SCHWELB, Senior Judge:

J.J. appeals from a civil protection order (CPO) entered against her by the trial court on September 15, 2011, at the request of B.A., who at that time was her estranged husband. Because, in our view,

the CPO was entered in contravention of the Full Faith and Credit Clause of Article IV, Section 1 of the United States Constitution and was also contrary to familiar notions of comity, we reverse.

## I.

The parties are the parents of a child, Z.A., who was born on January 4, 1995. It appears to be undisputed that the parties separated in November 2010, and that in May 2011, Ms. J. instituted divorce proceedings in the Circuit Court for Montgomery County, Maryland. On September 13, 2011, that court, per Judge Steven G. Salant, entered a "Consent Custody Order" which provided, *inter alia*, that: (1) the parties shall have joint legal custody of Z.A., who was then sixteen and one-half years of age; (2) that Mr. A. shall have sole physical custody of Z.A.; (3) that "[Mr. A.] shall endeavor to dismiss any restraining order case pending in the District of Columbia"; and (4) that Ms. J.'s claims for child support and alimony were waived. The order was entered by Judge Salant after the parties had agreed on the record, in a proceeding before Family Division Master Charles M. Cockerill on September 9, 2011, that "the father will . . . do everything he can to dismiss . . . [t]he D.C. restraining order."

On September 15, 2011, two days after the issuance of Judge Salant's order, a hearing was held in the Superior Court of the District of Columbia on Mr. A.'s petition for a CPO, which had been filed on September 1, 2011. Mr. A. testified that Ms. J. had threatened, stalked, and harassed him; that she had accessed his e-mail account without his consent; and that

she had attacked and mistreated Z.A. Ms. J. contested most of Mr. A.'s allegations and made several counter-accusations. She also testified that Z.A. had punched her, leaving her with two black eyes and in fear for her safety from her own child. She did not deny the claim relating to her having obtained access to Mr. A.'s e-mail account, but she noted that she was married to Mr. A. at the time she did so.[1]

At the conclusion of the hearing, the trial judge granted Mr. A.'s request for a CPO. She explained that Ms. J. "admits she accessed [Mr. A.'s] e-mail account without his permission," and that doing so constituted an intrafamily offense, namely, taking property without right.[2] The trial judge issued a CPO for a period of twelve months. Ms. J. filed a timely appeal, and she contends primarily that in light of the Maryland order, it was error for the trial judge to permit Mr. A. to proceed with, and for the court to grant, his application for a CPO.

## II.

At the beginning of the Superior Court hearing, shortly after both parties were sworn, Ms. J. brought up the Montgomery County order, noting that it provided for dismissal of her claims for child support and other benefits and that, in exchange, "[her] husband would dismiss this [petition]." She explained that "we are in court today because he has not done so."

The trial judge then questioned Mr. A. about the Maryland order, and she elicited the following:

> THE COURT: Now, this says that you shall endeavor to dismiss any restrain-

---

1. Ms. J. testified that Mr. A. also went into her e-mail account, but the trial judge told her that this was irrelevant because she (Ms. J.), and not Mr. A. was "in front of me for that."

2. When Ms. J. attempted to deny some of Mr. A.'s other allegations, the trial judge interrupted her and stated that "[w]e don't need to go any further because you admitted a crime. All I need is one."

ing order pending in the District of Columbia.

MR. A.: Yes, I did endeavor, ma'am.

THE COURT: What does that mean? Tell me what you mean by, you did endeavor.

MR. A.: I thought about the idea of taking away the restraining order ... or trying to dismiss this process. When I mentioned it to my son that it would be taken away, he was very very distressed by it. He fears his mother and he fears the idea that his mother would do harm to me or to him, now that she found out where our new location is.

THE COURT: And is this a deal you worked out with the judge in Maryland?

MR. A.: Yes.

THE COURT: Okay.

MR. A.: Well, the deal was that I would try to see if I can get it dismissed.

THE COURT: And you just decided not to?

MR. A.: Well, my son is in fear, Your Honor.

THE COURT: Okay.

The foregoing colloquy ended any direct discussion of Ms. J.'s claim that by proceeding with the case, Mr. A. was disobeying Judge Salant's order. Later in the hearing, however, the trial judge stated that the only remaining issue was "entering the civil protection order ... [b]ecause all the other issues have been resolved," and she added the following:

> Right. And if I do [grant the petition], it's a question for the Montgomery County court. They may say, you broke the deal, deal is off, and you start off at square one *there, but not here*

(Emphasis added.) The trial judge subsequently opined that the Maryland court "will have to decide whether he breached the agreement, because [Mr. A. is] here today." The judge did not elaborate on these remarks, nor did she explain why a District of Columbia court could properly permit Mr. A. to disregard a Maryland court's order while that order remained in effect.

■ In her *pro se* brief, Ms. J. argues primarily that the trial judge erred by not "honor[ing]" the portion of Judge Salant's order addressing Mr. A.'s obligation to "endeavor" to dismiss the CPO proceeding in the District of Columbia. Mr. A., also appearing *pro se,* argues that he did comply with the order. We agree with Ms. J., and we conclude that Mr. A.'s position is legally indefensible.

■ Compliance with a court order is not optional. As we explained in detail in *D.D. v. M.T.,* 550 A.2d 37 (D.C.1988),

> [c]ourts have a right to demand, and do insist upon, full and unstinting compliance with their commands. One who is subject to a court order has the obligation to obey it honestly and fairly, and to take all necessary steps to render it effective.... He or she may not do the prohibited thing, nor permit it to be done with his or her connivance.... Indeed, he or she must be diligent and energetic in carrying out the orders of the court ... and a token effort to comply will not do.

*Id.* at 44 (citations omitted); *see also Link v. District of Columbia,* 650 A.2d 929, 932 (D.C.1994). It is of no consequence, in this connection, that the order of the Montgomery County court was issued by consent rather than in contested litigation. Disobedience of a consent decree, like failure to comply with any court order, renders the disobeying party subject to an adjudication of civil contempt unless he can show either substantial compliance or an "inability to do that which the court commanded." *Fed. Mktg. Co. v. Virginia Impression Prods. Co., Inc.,* 823 A.2d 513, 521

(D.C.2003) (quoting *D.D. v. M.T.*, 550 A.2d at 44). In other words, Mr. A. was required to "take all necessary steps" to have his CPO petition dismissed, and he was obliged to be "diligent and energetic" in carrying out this task. *D.D. v. M.T.*, 550 A.2d at 44. This is especially true on the record here, for as we have noted, Master Cockerill explained to Mr. A., and Mr. A. agreed, that it was his obligation to "do *everything he can* to dismiss . . . . [t]he D.C. restraining order." (Emphasis added.)

Mr. A. claimed at oral argument before this court, not very persuasively, that he looked up the word "endeavor" in an (unidentified) dictionary, and that he learned that one of its meanings is "to look into." Mr. A. asserted that he investigated the possibility of dismissing his petition for a CPO, and that by doing so, he "endeavored" to comply with Judge Salant's order. At the very least, "to look into" would be an unorthodox understanding of the word of which he was claiming to be attempting to discover the meaning. According to MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 410 (9th ed.1985), "endeavor" means "to strive to achieve or reach," or "to attempt (as the fulfillment of an obligation) by exertion of effort." This is significantly different from "to look into." One is hard pressed to discern, in this record, any "striv[ing]" or "exertion of effort" on Mr. A.'s part. Moreover, no reasonable person could believe that in exchange for the waiver by Ms. J. of all claims for support, Mr. A. was merely expected "to look into" the possibility of dismissing the CPO petition, and that he had the right to proceed with his CPO case if he changed his mind (here, within two days after the Maryland

order was issued) or if his minor son asked him not to terminate the CPO proceeding.

But in any event, even if we were to assume, solely for the sake of argument, that Mr. A., who is a professor of art at a local university, did not understand what to "endeavor" to dismiss the CPO proceeding required of him, this would provide him with scant solace. In *D.D. v. M.T*, we explained that

> [i]f a party subject to a court order claims not to understand its requirements, he or she may apply to the court for construction or modification. . . . To fail to take such steps is to act at one's peril as to what the court's ultimate interpretation of the order will be.

550 A.2d at 44 (citations omitted); *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192, 69 S.Ct. 497, 93 L.Ed. 599 (1949) ("[I]f there were extenuating circumstances or if the decree was too burdensome in operation . . . . [r]espondents could have petitioned the District Court for a modification, clarification, or construction of the order.").

Mr. A. had ample opportunity to "endeavor" to dismiss the CPO proceeding. Under the provisions of Superior Court Domestic Violence Unit Rule 10(a), he had the right to "dismiss [his] action at any time . . . before entry of a civil protection order by filing a notice of dismissal."[3] Mr. A. could have requested, in conformity with his obligation under the Maryland order, that the trial judge dismiss his petition. Instead, Mr. A. successfully urged the judge in the District of Columbia to grant the very CPO which he was under the obligation to "strive" "diligent[ly] and energetic[ally]" to dismiss. *D.D. v. M.T.*, 550 A.2d at 44. By proceeding with his case in the District of Columbia, Mr. A.

---

**3.** The Superior Court docket entries reveal that Ms. J. did not file a response to Mr. A.'s petition.

failed to carry out either the letter or the purpose of Judge Salant's order, and by issuing the CPO, the trial judge effectively prevented the implementation of that order.

### III.

Article IV, Section 1 of the Constitution provides in pertinent part:

> Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.

U.S. CONST. art. IV, § 1. Although the District of Columbia is not a state, the Full Faith and Credit Clause is also applicable to the District. *See, e.g., Suydam v. Ameli,* 46 A.2d 763, 764 (D.C.1946); *Rollins v. Rollins,* 602 A.2d 1121, 1122 (D.C.1992). The Supreme Court has emphasized the importance of the Full Faith and Credit Clause in enforcing judgments uniformly across the country:

> The animating purpose of the full faith and credit command ... "was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin."

*Baker v. Gen. Motors Corp.,* 522 U.S. 222, 232, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) (quoting *Milwaukee County. v. M.E. White Co.,* 296 U.S. 268, 277, 56 S.Ct. 229, 80 L.Ed. 220 (1935)). The Full Faith and Credit Clause requires the court in the forum state to give "not some but full

credit," *Davis v. Davis,* 305 U.S. 32, 40, 59 S.Ct. 3, 83 L.Ed. 26 (1938), to a judgment of the court of another state. This court has recognized that "[u]nder the Full Faith and Credit Clause of the Constitution, a judgment properly authenticated and issued by a court having jurisdiction is entitled to the same degree of recognition in a sister state as would be afforded by the state of original rendition." *Nader v. Serody,* 43 A.3d 327, 332 (D.C.2012) (quoting *Fehr v. McHugh,* 413 A.2d 1285, 1286 (D.C.1980)) (citations omitted).

Two centuries ago, Francis Scott Key, who was an attorney as well as the author of the lyrics of the *Star Spangled Banner,* argued to the Supreme Court that a judgment of a court of another state was merely *prima facie* evidence as to how an issue should be decided in the forum, to be considered with the other parts of the record. *Mills v. Duryee,* 11 U.S. (7 Cranch) 481, 485, 3 L.Ed. 411 (1813). The Court, in an opinion by Justice Story, emphatically rejected this contention, explaining that if Mr. Key's proposed construction were adopted, it would render the Full Faith and Credit Clause "utterly unimportant and illusory." *Id.* The Court could "perceive no rational interpretation of the act of congress, unless it declares a judgment conclusive when a court of the particular state where it is rendered would pronounce the same decision."[4] *Id.*

Moreover, as the Supreme Court stated in *Franchise Tax Bd. v. Hyatt,* 538 U.S. 488, 123 S.Ct. 1683, 155 L.Ed.2d 702 (2003), "[o]ur precedent differentiates [between] the credit owed to laws (legislative measures and common law) and to judgments." *Id.* at 494, 123

---

4. In *Mills,* the Court was construing the federal Full Faith and Credit statute which was enacted to implement the constitutional provision. The Court has, however, subsequently treated *Mills* as a constitutional decision.

*Chicago & A.R. Co. v. Wiggins Ferry Co.,* 119 U.S. 615, 622, 7 S.Ct. 398, 30 L.Ed. 519 (1887); *see generally Pac. Emp'rs Ins. Co. v. Indus. Accident Comm'n,* 306 U.S. 493, 502, 59 S.Ct. 629, 83 L.Ed. 940 (1939).

S.Ct. 1683 (quoting *Baker,* 522 U.S. at 232, 118 S.Ct. 657) (alteration in original). Specifically,

> [r]egarding judgments ... the full faith and credit obligation is exacting. A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.... A court may be guided by the forum State's "public policy" in determining the *law* applicable to a controversy .... [b]ut [the Court's] decisions support no roving "public policy exception" to the full faith and credit due *judgments.*

*Baker,* 522 U.S. at 233, 118 S.Ct. 657 (citations omitted; emphasis in original).

 Although we are not aware of any decision in this jurisdiction presenting the question before us in a context precisely like the factual and procedural scenario here, the Full Faith and Credit Clause has been held applicable to situations indistinguishable in principle from this case. *See Hooks v. Hooks,* 771 F.2d 935, 948 (6th Cir.1985) (holding that a consent order entered by a state court in Texas requiring the dismissal of an action in a United States District Court in Tennessee must be accorded full faith and credit in the federal forum); *B.F. Rich & Co., Inc. v. Gray,* 933 A.2d 1231, 1241–43 (Del.2007) (holding that a Connecticut court's order approving a stipulation in which wife agreed not to oppose certain actions by husband relating to children's rights in corporate shares was entitled to full faith and credit by Delaware court). No persuasive argument has been offered to us, and we are aware of none,[5] that would render the authorities discussed above less than dispositive here.[6]

 Our holding should not be viewed as broader than it is, or than the facts of this case require. There may well be limits on the extent to which the Full Faith and Credit Clause requires a court in the forum jurisdiction to enforce an order entered by a court in another jurisdiction requiring a litigant to dismiss an action in the forum jurisdiction. *See Baker,* 522 U.S. at 235–36 & n. 9, 118 S.Ct. 657. Although, "[g]enerally, under proper equitable circumstances, a court may enjoin parties within its jurisdiction from prosecuting actions in other states[,] .... the exceptional nature of the remedy has caused courts to inquire closely into whether adequate grounds for the relief existed in particular cases." *Auerbach v. Frank,* 685 A.2d 404, 406 (D.C.1996) (citations and internal quotation marks omitted). "The fundamental rule is that, when concurrent jurisdiction exists, each forum is ordinarily free to proceed to judgment[,]" *id.* at 407 (internal quotation marks omitted), at least until the rules of *res judicata* apply (as they at least arguably do here). The reason for the exercise of restraint is readily apparent, for the courts of one state may not, in the absence of adequate justification, prevent the courts of another state from adjudicating controversies over which the courts of the second state have jurisdiction. As we stated in *Auerbach,* "an injunction prohibiting a party from bringing suit concurrently in another state with jurisdiction over the matter bears a very heavy burden of justification." *Id.* at 409. "[O]nly in extraordi-

5. We are aware, however, that neither party to this case is an attorney.

6. We recognize that the Maryland order required Mr. A. to "endeavor" to dismiss the CPO proceeding, a phrase which could be viewed as less definite than ordering him to dismiss it. We consider this to be of no consequence, however, because Mr. A. neither dismissed his petition nor endeavored to do so.

nary cases should the remedy be available ... where it is needed to prevent manifest wrong and injustice." *Id.* (internal citations and quotation marks omitted).

The Maryland court's order in this case, however, does not transgress, or even approach, the limits which the Supreme Court contemplated in *Baker*, nor does it contravene the principles articulated in *Auerbach*. Under the law of this jurisdiction, Mr. A. had the unilateral right to dismiss his CPO petition, without leave of the Superior Court. *See* Super. Ct. Dom. Violence Unit R. 10(a). By ordering Mr. A., with his explicit consent, to endeavor to dismiss that CPO petition, the Maryland court did not impermissibly intrude on the authority of the Superior Court. Moreover, having agreed to the entry of the consent order in Montgomery County, Mr. A. is hardly in a position to contend that the Maryland court usurped authority that it did not possess. To entertain such a claim would effectively permit Mr. A. to barter selectively to his own advantage, by consenting in Maryland to an order requiring him to endeavor to dismiss the CPO proceeding, by then using that ostensible concession to secure dismissal of some of Ms. J.s claims (here, alleged child support arrearages), and finally by reneging in the Superior Court on the agreement made in Maryland and proceeding with a claim that was supposed to be precluded by Judge Salants order. Such a result would surely be contrary to fundamental principles of equity and fairness.

In any event, even if the Full Faith and Credit Clause were not applicable, broader notions of comity should have led the trial judge to require Mr. A. to comply with his obligations under the Maryland consent order, as the judge doubtless would have done if the same order been entered by a Superior Court judge. *Cf. Solomon v. Supreme Court of Fla.*, 816 A.2d 788, 790 (D.C.2002) (adopting the principle of judicial comity, that is, [t]he principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and/[or] judicial decisions of another, not as a matter of obligation, but out of deference and respect (internal quotation marks omitted; alterations in original)).

The trial judge, as we have seen, told Mr. A. that the Montgomery County court might rule the "deal ... off" because Mr. A. had broken it, but this would apply only *"there, but not here."* (Emphasis added.) The judge was apparently of the opinion that failure to comply with the order of the Maryland court did not affect or impair in any way the right of the disobedient party to avail himself of his breach and to prevail in the District of Columbia. But aside from the general principle that "no man may take advantage of his own wrong," *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), the trial judge evidently gave no consideration to the Full Faith and Credit Clause to the principles of comity or to the obligation to accord due respect to, and to rule consistently with, the judgment entered by the court of another jurisdiction. Moreover, although Ms. J., a *pro se* litigant, did not mention the Full Faith and Credit Clause itself, she specifically and sufficiently asserted the claim that the judge was required to rule in conformity with Judge Salant's order. The orders of the two courts are irreconcilable, the very situation that the Full Faith and Credit Clause, and familiar notions of comity were designed to prevent.[7] Accordingly,

---

7. *This court has held that only final judgments are entitled to Full Faith and Credit. Gamble v. Gamble, 258 A.2d 261, 262 (D.C.* 1969). Because many custody and child support orders are subject to modification, we have held them to be non-final for the pur-

the CPO issued against Ms. J. cannot stand.

## IV.

For the foregoing reasons, the judgment of the trial court is reversed, with directions to the trial court to vacate the CPO. Any proceedings before the trial court relating to an extension of the CPO shall be resolved in a manner consistent with this order. The costs of the transcript are awarded to Ms. J. and shall be paid by Mr. A. D.C.App. R. 39(a)(3).

*So ordered.*

pose of applying the Full Faith and Credit Clause. *See Rollins*, 602 A.2d at 1122–23. But here, custody is not at issue, and the part of the Maryland order addressing the CPO petition is severable from the provisions of that order dealing with custody. *See Hooks*, 771 F.2d at 948.