# FRANCHISE TAX BOARD OF CALIFORNIA *v.* HYATT ET AL.

## ET AL.

No. 02–42.   Argued February 24, 2003—Decided April 23, 2003

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Felix E. Leatherwood,* Deputy Attorney General of California, argued the cause for petitioner. With him on the briefs were *Bill Lockyer,* Attorney General, *Manuel M. Medeiros,* State Solicitor, *David S. Chaney,* Senior Assistant Attorney General, and *William Dean Freeman,* Lead Supervising Deputy Attorney General.

*H. Bartow Farr III* argued the cause for respondents. With him on the brief were *Peter C. Bernhard* and *Donald J. Kula.**

JUSTICE O'CONNOR delivered the opinion of the Court.

We granted certiorari to resolve whether the Nevada Supreme Court's refusal to extend full faith and credit to California's statute immunizing its tax collection agency from suit violates Article IV, § 1, of the Constitution. We conclude it does not, and we therefore affirm the judgment of the Nevada Supreme Court.

I

Respondent Gilbert P. Hyatt (hereinafter respondent) filed a "part-year" resident income tax return in California for 1991. App. to Pet. for Cert. 54. In the return, respondent represented that as of October 1, 1991, he had ceased to be a California resident and had become a resident of Nevada. In 1993, petitioner California Franchise Tax Board (CFTB) commenced an audit to determine whether respondent had underpaid state income taxes. *Ibid.* The audit focused on

---

*Briefs of *amici curiae* urging reversal were filed for the State of Florida et al. by *Richard E. Dornan,* Attorney General of Florida, *Jonathan A. Glogau, Barbara J. Ritchie,* Acting Attorney General of Alaska, and *Thomas R. Keller,* Acting Attorney General of Hawaii, and by the Attorneys General for their respective jurisdictions as follows: *Ken Salazar* of Colorado, *Richard Blumenthal* of Connecticut, *M. Jane Brady* of Delaware, *James E. Ryan* of Illinois, *Steve Carter* of Indiana, *G. Steven Rowe* of Maine, *J. Joseph Curran, Jr.,* of Maryland, *Jennifer M. Granholm* of Michigan, *Mike Moore* of Mississippi, *Mike McGrath* of Montana, *Wayne Stenehjem* of North Dakota, *Betty D. Montgomery* of Ohio, *Anabelle Rodríguez* of Puerto Rico, *Mark L. Shurtleff* of Utah, *William H. Sorrell* of Vermont, *Jerry W. Kilgore* of Virginia, and *Darrell V. McGraw, Jr.,* of West Virginia; for the Multistate Tax Commission by *Frank D. Katz;* and for the National Governors Association et al. by *Richard Ruda* and *James I. Crowley.*

*Sharon L. Browne* filed a brief for the Pacific Legal Foundation as *amicus curiae* urging affirmance.

respondent's claim that he had changed residency shortly before receiving substantial licensing fees for certain patented inventions related to computer technology.

At the conclusion of its audit, CFTB determined that respondent was a California resident until April 3, 1992, and accordingly issued notices of proposed assessments for income taxes for 1991 and 1992 and imposed substantial civil fraud penalties. *Id.*, at 56–57, 58–59. Respondent protested the proposed assessments and penalties in California through CFTB's administrative process. See Cal. Rev. & Tax. Code Ann. §§ 19041, 19044–19046 (West 1994).

On January 6, 1998, with the administrative protest ongoing in California, respondent filed a lawsuit against CFTB in Nevada in Clark County District Court. Respondent alleges that CFTB directed "numerous and continuous contacts . . . at Nevada" and committed several torts during the course of the audit, including invasion of privacy, outrageous conduct, abuse of process, fraud, and negligent misrepresentation. App. to Pet. for Cert. 51–52, 54. Respondent seeks punitive and compensatory damages. *Id.*, at 51–52. He also sought a declaratory judgment "confirm[ing] [his] status as a Nevada resident effective as of September 26, 1991," *id.*, at 51, but the District Court dismissed the claim for lack of subject matter jurisdiction on April 16, 1999, App. 93–95.

During the discovery phase of the Nevada lawsuit, CFTB filed a petition in the Nevada Supreme Court for a writ of mandamus, or in the alternative, for a writ of prohibition, challenging certain of the District Court's discovery orders. While that petition was pending, CFTB filed a motion in the District Court for summary judgment or, in the alternative, for dismissal for lack of jurisdiction. CFTB argued that the District Court lacked subject matter jurisdiction because principles of sovereign immunity, full faith and credit, choice of law, comity, and administrative exhaustion all required that the District Court apply California law, under which:

"Neither a public entity nor a public employee is liable for an injury caused by:

"(a) Instituting any judicial or administrative proceeding or action for or incidental to the assessment or collection of a tax [or]

"(b) An act or omission in the interpretation or application of any law relating to a tax." Cal. Govt. Code Ann. § 860.2 (West 1995).

The District Court denied CFTB's motion for summary judgment or dismissal, prompting CFTB to file a second petition in the Nevada Supreme Court. This petition sought a writ of mandamus ordering the dismissal of the case, or in the alternative, a writ of prohibition and mandamus limiting the scope of the suit to claims arising out of conduct that occurred in Nevada.

On June 13, 2001, the Nevada Supreme Court granted CFTB's second petition, dismissed the first petition as moot, and ordered the District Court to enter summary judgment in favor of CFTB. App. to Pet. for Cert. 38–43. On April 4, 2002, however, the court granted respondent's petition for rehearing, vacated its prior ruling, granted CFTB's second petition in part, and denied it in part. *Id.*, at 5–18. The court held that the District Court "should have declined to exercise its jurisdiction over the underlying negligence claim under comity principles" but that the intentional tort claims could proceed to trial. *Id.*, at 7.

The Nevada Supreme Court noted that both Nevada and California have generally waived their sovereign immunity from suit in state court and "have extended the waivers to their state agencies or public employees except when state statutes expressly provide immunity." *Id.*, at 9–10 (citing Nev. Rev. Stat. § 41.031 (1996); Cal. Const., Art. 3, § 5; and Cal. Govt. Code Ann. § 820 (West 1995)). Whereas Nevada has not conferred immunity on its state agencies for intentional torts committed within the course and scope of

employment, the court acknowledged that "California has expressly provided [CFTB] with complete immunity." App. to Pet. for Cert. 10 (citing Cal. Govt. Code Ann. § 860.2 (West 1995) and *Mitchell* v. *Franchise Tax Board,* 183 Cal. App. 3d 1133, 228 Cal. Rptr. 750 (1986)). To determine which State's law should apply, the court applied principles of comity.

Though the Nevada Supreme Court recognized the doctrine of comity as "an accommodation policy, under which the courts of one state voluntarily give effect to the laws and judicial decisions of another state out of deference and respect, to promote harmonious interstate relations," the court also recognized its duty to determine whether the application of California law "would contravene Nevada's policies or interests," giving "due regard to the duties, obligations, rights and convenience of Nevada's citizens." App. to Pet. for Cert. 11. "An investigation is generally considered to be a discretionary function," the court observed, "and Nevada provides its [own] agencies with immunity for the performance of a discretionary function even if the discretion is abused." *Id.,* at 12. "[A]ffording [CFTB] statutory immunity for negligent acts," the court therefore concluded, "does not contravene any Nevada interest in this case." *Ibid.* The court accordingly held that "the district court should have declined to exercise its jurisdiction" over respondent's negligence claim under principles of comity. *Id.,* at 7. With respect to the intentional torts, however, the court held that "affording [CFTB] statutory immunity . . . does contravene Nevada's policies and interests in this case." *Id.,* at 12. Because Nevada "does not allow its agencies to claim immunity for discretionary acts taken in bad faith, or for intentional torts committed in the course and scope of employment," the court held that "Nevada's interest in protecting its citizens from injurious intentional torts and bad faith acts committed by sister states' government employees" should be accorded

greater weight "than California's policy favoring complete immunity for its taxation agency." *Id.*, at 12–13.

We granted certiorari to resolve whether Article IV, § 1, of the Constitution requires Nevada to give full faith and credit to California's statute providing its tax agency with immunity from suit, 537 U. S. 946 (2002), and we now affirm.

## II

The Constitution's Full Faith and Credit Clause provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Art. IV, § 1. As we have explained, "[o]ur precedent differentiates the credit owed to laws (legislative measures and common law) and to judgments." *Baker* v. *General Motors Corp.*, 522 U. S. 222, 232 (1998). Whereas the full faith and credit command "is exacting" with respect to "[a] final judgment . . . rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment," *id.*, at 233, it is less demanding with respect to choice of laws. We have held that the Full Faith and Credit Clause does not compel " 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.' " *Sun Oil Co.* v. *Wortman*, 486 U. S. 717, 722 (1988) (quoting *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n*, 306 U. S. 493, 501 (1939)).

The State of Nevada is undoubtedly "competent to legislate" with respect to the subject matter of the alleged intentional torts here, which, it is claimed, have injured one of its citizens within its borders. " '[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally un-

fair.'" *Phillips Petroleum Co.* v. *Shutts,* 472 U. S. 797, 818 (1985) (quoting *Allstate Ins. Co.* v. *Hague,* 449 U. S. 302, 312–313 (1981) (plurality opinion)); see 472 U. S., at 822–823. Such contacts are manifest in this case: the plaintiff claims to have suffered injury in Nevada while a resident there; and it is undisputed that at least some of the conduct alleged to be tortious occurred in Nevada, Brief for Petitioner 33–34, n. 16. See, *e. g., Carroll* v. *Lanza,* 349 U. S. 408, 413 (1955) ("The State where the tort occurs certainly has a concern in the problems following in the wake of the injury"); *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n, supra,* at 503 ("Few matters could be deemed more appropriately the concern of the state in which [an] injury occurs or more completely within its power").

CFTB does not contend otherwise. Instead, CFTB urges this Court to adopt a "new rule" mandating that a state court extend full faith and credit to a sister State's statutorily recaptured sovereign immunity from suit when a refusal to do so would "interfer[e] with a State's capacity to fulfill its own sovereign responsibilities." Brief for Petitioner 13 (internal quotation marks omitted).

We have, in the past, appraised and balanced state interests when invoking the Full Faith and Credit Clause to resolve conflicts between overlapping laws of coordinate States. See *Bradford Elec. Light Co.* v. *Clapper,* 286 U. S. 145 (1932) (holding that the Constitution required a federal court sitting in New Hampshire to apply a Vermont workers' compensation statute in a tort suit brought by the administrator of a Vermont worker killed in New Hampshire). This balancing approach quickly proved unsatisfactory. Compare *Alaska Packers Assn.* v. *Industrial Accident Comm'n of Cal.,* 294 U. S. 532, 550 (1935) (holding that a forum State, which was the place of hiring but not of a claimant's domicile, could apply its own law to compensate for an accident in another State, because "[n]o persuasive reason" was shown for requiring application of the law of the State where the

accident occurred), with *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n, supra,* at 504–505 (holding that the State where an accident occurred could apply its own workers' compensation law and need not give full faith and credit to that of the State of hiring and domicile of the employer and employee). As Justice Robert H. Jackson, recounting these cases, aptly observed, "it [is] difficult to point to any field in which the Court has more completely demonstrated or more candidly confessed the lack of guiding standards of a legal character than in trying to determine what choice of law is required by the Constitution." Full Faith and Credit—The Lawyer's Clause of the Constitution, 45 Colum. L. Rev. 1, 16 (1945).

In light of this experience, we abandoned the balancing-of-interests approach to conflicts of law under the Full Faith and Credit Clause. *Allstate Ins. Co.* v. *Hague,* 449 U. S., at 308, n. 10 (plurality opinion); *id.,* at 322, n. 6 (STEVENS, J., concurring in judgment); *id.,* at 339, n. 6 (Powell, J., dissenting). We have recognized, instead, that "it is frequently the case under the Full Faith and Credit Clause that a court can lawfully apply either the law of one State or the contrary law of another." *Sun Oil Co.* v. *Wortman, supra,* at 727. We thus have held that a State need not "substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." *Pacific Employers Ins. Co.* v. *Industrial Accident Comm'n, supra,* at 501; see *Baker* v. *General Motors Corp., supra,* at 232; *Sun Oil Co.* v. *Wortman, supra,* at 722; *Phillips Petroleum Co.* v. *Shutts, supra,* at 818–819. Acknowledging this shift, CFTB contends that this case demonstrates the need for a new rule under the Full Faith and Credit Clause that will protect "core sovereignty" interests as expressed in state statutes delineating the contours of the State's immunity from suit. Brief for Petitioner 13.

We disagree. We have confronted the question whether the Full Faith and Credit Clause requires a forum State to

recognize a sister State's legislatively recaptured immunity once before. In *Nevada* v. *Hall*, 440 U. S. 410 (1979), an employee of the University of Nevada was involved in an automobile accident with California residents, who filed suit in California and named Nevada as a defendant. The California courts refused to apply a Nevada statute that capped damages in tort suits against the State on the ground that "to surrender jurisdiction or to limit respondents' recovery to the $25,000 maximum of the Nevada statute would be obnoxious to its statutorily based policies of jurisdiction over nonresident motorists and full recovery." *Id.*, at 424.

We affirmed, holding, first, that the Constitution does not confer sovereign immunity on States in the courts of sister States. *Id.*, at 414–421. Petitioner does not ask us to reexamine that ruling, and we therefore decline the invitation of petitioner's *amici* States, see Brief for State of Florida et al. as *Amici Curiae* 2, to do so. See this Court's Rule 14.1(a); *Mazer* v. *Stein*, 347 U. S. 201, 206, n. 5 (1954) ("We do not reach for constitutional questions not raised by the parties").

The question presented here instead implicates *Hall*'s second holding: that the Full Faith and Credit Clause did not require California to apply Nevada's sovereign immunity statutes where such application would violate California's own legitimate public policy. 440 U. S., at 424. The Court observed in a footnote:

> "California's exercise of jurisdiction in this case poses no substantial threat to our constitutional system of cooperative federalism. Suits involving traffic accidents occurring outside of Nevada could hardly interfere with Nevada's capacity to fulfill its own sovereign responsibilities. We have no occasion, in this case, to consider whether different state policies, either of California or of Nevada, might require a different analysis or a different result." *Id.*, at 424, n. 24.

CFTB asserts that an analysis of this lawsuit's effects should lead to a different result: that the Full Faith and Credit Clause requires Nevada to apply California's immunity statute to avoid interference with California's "sovereign responsibility" of enforcing its income tax laws. Brief for Petitioner 13.

Our past experience with appraising and balancing state interests under the Full Faith and Credit Clause counsels against adopting CFTB's proposed new rule. Having recognized, in *Hall*, that a suit against a State in a sister State's court "necessarily implicates the power and authority" of both sovereigns, 440 U. S., at 416, the question of which sovereign interest should be deemed more weighty is not one that can be easily answered. Yet petitioner's rule would elevate California's sovereignty interests above those of Nevada, were we to deem this lawsuit an interference with California's "core sovereign responsibilities." We rejected as "unsound in principle and unworkable in practice" a rule of state immunity from federal regulation under the Tenth Amendment that turned on whether a particular state government function was "integral" or "traditional." *Garcia* v. *San Antonio Metropolitan Transit Authority*, 469 U. S. 528, 546–547 (1985). CFTB has convinced us of neither the relative soundness nor the relative practicality of adopting a similar distinction here.

Even were we inclined to embark on a course of balancing States' competing sovereign interests to resolve conflicts of laws under the Full Faith and Credit Clause, this case would not present the occasion to do so. There is no principled distinction between Nevada's interests in tort claims arising out of its university employee's automobile accident, at issue in *Hall*, and California's interests in the tort claims here arising out of its tax collection agency's residency audit. To be sure, the power to promulgate and enforce income tax laws is an essential attribute of sovereignty. See *Franchise Tax Bd. of Cal.* v. *Postal Service*, 467 U. S. 512, 523 (1984)

("'[T]axes are the life-blood of government'" (quoting *Bull* v. *United States,* 295 U. S. 247, 259–260 (1935))). But the university employee's educational mission in *Hall* might also be so described. Cf. *Brown* v. *Board of Education,* 347 U. S. 483, 493 (1954) ("[E]ducation is perhaps the most important function of state and local governments").

If we were to compare the degree to which the allegedly tortious acts here and in *Hall* are related to a core sovereign function, we would be left to ponder the relationship between an automobile accident and educating, on one hand, and the intrusions alleged here and collecting taxes, on the other. We discern no constitutionally significant distinction between these relationships. To the extent CFTB complains of the burdens and expense of out-of-state litigation, and the diversion of state resources away from the performance of important state functions, those burdens do not distinguish this case from any other out-of-state lawsuit against California or one of its agencies.

States' sovereignty interests are not foreign to the full faith and credit command. But we are not presented here with a case in which a State has exhibited a "policy of hostility to the public Acts" of a sister State. *Carroll* v. *Lanza,* 349 U. S., at 413. The Nevada Supreme Court sensitively applied principles of comity with a healthy regard for California's sovereign status, relying on the contours of Nevada's own sovereign immunity from suit as a benchmark for its analysis. See App. to Pet. for Cert. 10–13.

In short, we heed the lessons learned as a result of *Bradford Elec. Light Co.* v. *Clapper,* 286 U. S. 145 (1932), and its progeny. Without a rudder to steer us, we decline to embark on the constitutional course of balancing coordinate States' competing sovereign interests to resolve conflicts of laws under the Full Faith and Credit Clause.

The judgment of the Nevada Supreme Court is affirmed.

*It is so ordered.*