**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TRACY O'REILLY KOHLRAUTZ,
                    *Plaintiff,*

OILMEN PARTICIPATION
CORPORATION,
                    *Counter-claimant,*

                    v.

OILMEN PARTICIPATION
CORPORATION,
                    *Defendant,*

TRACY O'REILLY KOHLRAUTZ,
                    *Counter-defendant,*

                    v.

OILMEN PARTICIPATION
CORPORATION,
          *Third-party-plaintiff-*
                    *Appellee,*

                    v.

CHRISTOPHER J. WEBER, Receiver,
          *Third-party-defendant-*
                    *Appellant.*

No. 03-16340

D.C. No.
CV-00-00042-
RLH/PAL

OPINION

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, District Judge, Presiding

Argued and Submitted
February 16, 2005—San Francisco, California
Submission withdrawn February 18, 2005
Resubmitted March 20, 2006

3269

Filed March 27, 2006

Before: Dorothy W. Nelson, William A. Fletcher, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge William A. Fletcher

## COUNSEL

Terence L. Thompson, Office of the Attorney General, Austin, Texas, for the defendant-appellant.

Lawrence A. Kasten, Phoenix, Arizona; Von S. Heinz, Lewis & Roca, Las Vegas, Nevada; Mara E. Fortin, Morris Polich & Purdy, Las Vegas, Nevada, for the plaintiff-appellee.

**OPINION**

W. FLETCHER, Circuit Judge:

Christopher Weber was appointed by a Texas state court as a receiver for the marital estate of Tracy O'Reilly Kohlrautz and Franz-Wilhelm Kohlrautz. Weber thereafter participated in a Nevada state court suit brought by Ms. Kohlrautz against Oilmen Participation Corporation ("Oilmen"). Oilmen removed the suit to federal district court, and then filed what it called a "third-party complaint" against Weber alleging abuse of process. Weber moved for summary judgment based on official immunity as a court-appointed receiver. The district court denied Weber's motion, and Weber now appeals. We first hold that state rather than federal official immunity law applies to this case. Then, based on Nevada choice-of-law rules, we hold that Nevada rather than Texas law applies. Applying Nevada's law of official immunity for court-appointed receivers, we affirm the district court's denial of summary judgment.

## I.  Background

The Kohlrautzes were married in Luxembourg in 1981. Four years later, they moved to Freeport, Grand Bahamas. On September 17, 1997, Ms. Kohlrautz flew to Texas. Two days after arriving in Texas, Ms. Kohlrautz filed for divorce in that state. The Bexar County district court held that Mr. and Ms. Kohlrautz were domiciled in Texas for purposes of divorce proceedings in that state. It entered a divorce decree on December 1, 1997.

On November 14, 1997, the Texas court appointed a receiver "to manage, control, and preserve the property" of the marital estate. Ten months later, the court replaced the original receiver with Weber, the appellant in this case. Determining what assets belong to the marital estate has been a

hotly contested matter involving extensive litigation in many jurisdictions.

On December 20, 1999, Ms. Kohlrautz filed suit against Oilmen in state court in Nevada. Her complaint alleges that two pieces of Nevada property owned by Oilmen are assets of the marital estate. Oilmen removed the suit to federal district court based on diversity of citizenship. *See* 28 U.S.C. § 1332. After removal, Oilmen filed a counterclaim against Kohlrautz, as well as what it called a "third-party claim" against Weber. Oilmen's central contention against Weber was that he engaged in tortious abuse of process in assisting Ms. Kohlrautz in bringing the Nevada suit against Oilmen.

Weber moved for summary judgment in the federal district court based on a defense of official immunity as a court-appointed receiver. Apparently applying federal law, the district court concluded that Weber was protected by absolute immunity for acts within the scope of his authority as receiver. However, the court held that there were triable questions of fact as to whether he committed acts outside his authority. It accordingly denied Weber's motion. Weber has timely appealed.

We have asked for and received supplemental briefing on the issue of what law is applicable to this case. We hold that Nevada's law of official immunity for court-appointed receivers applies. Based on that law, we affirm the result reached by the district court.

## II.　Interlocutory Review and Standard of Review

**[1]** We do not ordinarily have jurisdiction to review a denial of a motion for summary judgment because such a denial is not a final judgment. However, we do have jurisdiction over interlocutory appeals in suits brought under 42 U.S.C. § 1983, or brought as so-called "*Bivens*" actions, if the denial of summary judgment is based on a rejection of a

defense of official immunity from suit. *See, e.g., Schwenk v. Hartford*, 204 F.3d 1187, 1195 (9th Cir. 2000) (suit brought under § 1983)*; Lee v. Gregory*, 363 F.3d 931, 932 (9th Cir. 2004) (suit brought directly under the Fourth Amendment pursuant to *Bivens v. Six Unknown Named Agents of Federal Narcotics Bureau*, 403 U.S. 388 (1971)). Although neither the Supreme Court nor this circuit has had occasion to uphold interlocutory appeals in suits where official immunity is asserted as a defense to a state-law cause of action, we believe that the principle allowing interlocutory review in official immunity cases applies more broadly than merely to actions under federal law. *See, e.g.*, *Will v. Hallock*, 126 S. Ct. 952, 958 (2006) (stating without qualification that "orders rejecting absolute immunity . . . and qualified immunity" are "immediately appealable"). We therefore hold that we have jurisdiction over this appeal.

Our review is limited to issues of law and "does not extend to claims in which the determination of [official] immunity depends on disputed issues of material fact." *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 942 (9th Cir. 2003) (citation and internal quotation marks omitted). To the degree the facts are in dispute, we assume the facts for which Oilmen has provided evidentiary support are correct in determining whether the district court should have denied Weber's motion for summary judgment. *See id.*

## III.   Discussion

### A.   State Rather than Federal Official Immunity Law

We must first decide whether federal or state official immunity law applies to this case. There are two possible lines of analysis, both leading to the same conclusion.

**[2]** The first is an *Erie* analysis under *Hanna v. Plumer*, 380 U.S. 460 (1965). A federal court follows federal procedural law and, where it applies, state substantive law. *See*

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). A defense based on official immunity could conceivably come within the category described in *Hanna* as "falling within the uncertain area between substance and procedure [and] rationally capable of classification as either." 380 U.S. at 472. If there is an applicable federal rule of civil procedure, and if that rule is valid under the Rules Enabling Act, 28 U.S.C. § 2072, that rule should be applied. *Id.* at 473-74.

**[3]** In the case now before us, however, there is no applicable federal rule of civil procedure. Absent a valid and applicable federal rule, we fall back on the "outcome-determinative" test first articulated in *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945), and the interest-balancing test first articulated in *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525 (1958). The outcome-determinative test instructs federal courts to apply state law when the difference between the state and federal rule would determine the outcome of the litigation. The interest-balancing test instructs federal courts to evaluate and balance the federal and state interests in deciding whether to apply the state or federal rule. The two tests are not mutually exclusive, but rather complementary. *See Gasperini*, 518 U.S. at 431-33 (applying both a *York* and a *Byrd* analysis).

**[4]** The application of the outcome-determinative test is "guided by 'the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.' " *Id.* at 428 (quoting *Hanna*, 380 U.S. at 468). We must ask "whether application of the [state] rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum State," and "whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal

court." *Hanna*, 380 U.S. at 468 n.9; *see also Gasperini*, 518 U.S. 428 (quoting from this passage in *Hanna*).

**[5]** Applying this test, we conclude that an official immunity rule is outcome-determinative, and that we should therefore apply state rather than federal law. The defense is both an immunity from suit and, in practical effect, an immunity from liability. Depending on the scope of the immunity provided, a suit may or may not be allowed to go forward against a defendant claiming this defense. Where there is a material difference between the federal and state law for official immunity — as there is for at least one of the two state laws potentially applicable in this case — there is an obvious incentive to choose either federal or state court if that choice is tantamount to a choice between federal and state law.

**[6]** The application of the interest-balancing test also leads to the application of state law. Weber, the party asserting official immunity, was appointed as a judicial receiver by a Texas state court. Oilmen alleges that Weber has engaged in tortious abuse of judicial process under Nevada state law in Nevada state courts. Oilmen asserts no federal claim. We see no federal interest in applying federal official immunity law against a state court-appointed quasi-judicial officer in a suit brought in state court and based on state law. Rather, we believe that a state has a strong interest in applying state official immunity law in such a suit. Therefore, we conclude under both the outcome-determinative and interest-balancing tests that state rather than federal official immunity law is applicable to this case.

**[7]** A second analysis would treat official immunity as a substantive rule of law. This analysis is appropriate if official immunity law does not fall within *Hanna*'s "uncertain area between substance and procedure [and] rationally capable of classification as either," but is, rather, simply a substantive rule. The outer boundaries of the grey area under *Hanna* — the area in which a federal rule of civil procedure could per-

missibly be applicable — are defined by the Rules Enabling Act. That Act provides that the federal rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). We believe that a defense of official immunity would most likely "abridge, enlarge or modify" a substantive right within the meaning of the Act, and that official immunity therefore cannot be governed by a federal rule of civil procedure. If this is so, the outcome-determinative and interest-balancing tests cannot be applied in the manner contemplated in *Hanna*.

**[8]** Instead, we are faced with a straightforward choice between the substantive official immunity law of a state and the analogous substantive federal official immunity law. The Rules of Decision Act, 28 U.S.C. § 1652, provides:

> The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

Not only may state law be overridden by the federal Constitution, treaties, and federal statutes, as provided in the explicit terms of the Act. In addition, federal common law may override state law. *See*, *e.g., Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943) (applying federal common law rather than the law of Pennsylvania to determine the timeliness of notification of a forged endorsement on a check issued by the federal government). But the Rules of Decision Act only tells us what we already know — that state law applies unless overridden by federal law. It does not tell how to choose between state and federal substantive laws.

An example of such a choice may be seen in *O'Melveny & Meyers v. FDIC*, 512 U.S. 79, 80-81 (1994), in which the Supreme Court was asked to decide whether "a federal-law or

rather a state-law rule of decision . . . govern[ed] the tort lia-bility of attorneys who provided services to [a federally insured] bank." More specifically, the Court was asked to choose between an asserted federal common law rule and the state-law rule in determining whether knowledge held by cor-porate officers should be imputed to the corporation itself. The Court declined to create a federal common law, writing that "this is not one of those extraordinary cases in which the judicial creation of a federal rule of decision is warranted." *Id.* at 89.

This case is like *O'Melveny* in the sense that we must choose between a state rule and a federal common law rule. However, it is unlike *O'Melveny* in the sense that we are not being asked to create the rule. Rather, a federal common law rule of immunity for judicial and quasi-judicial officers already exists. *See*, *e.g.*, *Stump v. Sparkman*, 435 U.S. 349 (1978) (judicial immunity); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995) (immunity for court-appointed receiver); *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298 (9th Cir. 1989) (same). The question is whether to apply that federal rule.

**[9]** We conclude the federal government has virtually no interest in applying the federal rule in this case, and that, by contrast, the two states involved both have strong interests in applying a state rule. (We decide, *infra*, which of the two competing state rules to apply.) Federal official immunity law has largely been developed in the context of damage suits brought under 42 U.S.C. § 1983 alleging constitutional viola-tions by state and local officers, and to a lesser extent in the context of *Bivens* actions alleging violations by federal offi-cials. For reasons specific to § 1983 and *Bivens* suits, the con-tours of federal official immunity law have been carefully drawn to provide appropriate vindication of federal rights but, at the same time, to provide appropriate levels of protection for governmental officials. *See*, *e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Stump*, 435 U.S. 349. Those reasons are

not necessarily relevant to appropriate levels of official immunity for state or local officials from damage suits alleging violations of state law. We believe that in general a defense of official immunity based on state law is appropriate when the underlying cause of action is based on state rather than federal law. We believe that this is certainly the case here, where a state court-appointed receiver has been sued under state law for alleged tortious abuse of process using state courts.

[10] We therefore conclude, under either line of analysis, that state rather than federal official immunity law for court-appointed receivers should be applied to this case. We now turn to the question whether that law should be the law of Nevada or Texas.

### B.   Nevada Rather than Texas Law

Oilmen owns property in Nevada. It was sued in Nevada state courts by Ms. Kohlrautz on the asserted ground that the property is part of the marital estate. It then brought a claim against Weber, alleging abuse of process under Nevada state law using the Nevada courts. Oilmen contends that any official immunity defense available to Weber should be based on Nevada law.

Weber was appointed by a Texas state court as receiver for the marital estate in a divorce proceeding in that court. His authority as a receiver is determined in accordance with Texas law and with the terms of his appointment. He contends that his official immunity defense should be based on Texas law.

[11] We therefore must choose between Nevada and Texas law of official immunity for court-appointed receivers. In determining what state law to apply, a federal court applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In this case, we therefore look to the choice-of-law rules of Nevada. In *Motenko v. MGM Dist., Inc*., 921 P.2d 933 (Nev.

1996), the Nevada Supreme Court abandoned the "vested interest" analysis of the Restatement (First) of Conflict of Laws in tort cases in favor of a new analysis. The Nevada Supreme Court was unwilling to adopt the "significant relationship" approach of the Restatement (Second) of Conflict of Laws because of the indeterminacy of that approach. It adopted instead a modified version of the Second Restatement. In the view of the Nevada Supreme Court, this modified approach best accommodates the twin goals of achieving "certainty, predictability and uniformity of result" and of allowing a Nevada court "to more frequently apply the law with which it is most familiar." *Id.* at 935.

**[12]** Under the approach adopted in *Motenko*, Nevada courts apply a "presumption that Nevada law governs" in tort cases. *Id.* at 936. They apply the law of another state only if that state has an "overwhelming interest" in the application of its law. *Id.* at 935. Specifically,

> Another state has an overwhelming interest if two or more of the following factors are met:
>
>> (a) it is the place where the conduct giving rise to the injury occurred;
>>
>> (b) it is the place where the injury is suffered;
>>
>> (c) the parties have the same domicile, residence, nationality, place of incorporation, or place of business and it is different from the forum state;
>>
>> (d) it is the place where the relationship, if any, between the parties is centered.

*Id.* at 935.

**[13]** We conclude that the *Motenko* analysis applies not only to the question of which state's tort liability law applies, but also to the question of which state's official immunity law applies as a defense in a state-law tort suit. Applying *Motenko*, we conclude that a Nevada court would apply Nevada official immunity law in this case.

**[14]** The alleged tort at the center of Oilmen's complaint against Weber is abuse of process in the use of the Nevada courts. The first *Motenko* factor is the place where the alleged tortious conduct occurred; that place is clearly Nevada rather than Texas. The second factor is where the injury was suffered. That place may be, in part, Nevada. It may also be, in part, the place where Oilmen has its headquarters or principal place of business, or perhaps the place where its owner or owners are located. Oilmen is a Liberian corporation; there is nothing in the record to indicate that its headquarters, its principal place of business, or its owner(s) are in Texas. We are therefore confident in concluding that the place of injury was not Texas. The third factor is the requirement that the parties have the same domicile, residence, nationality, place of incorporation, or place of business, and that that place be different from the forum state. Weber is domiciled in Texas; Oilmen, by contrast, is a Liberian corporation with no demonstrated connection to Texas. The parties therefore do not have the same domicile, residence, etc. Finally, the fourth factor is the place where the relationship between the parties is centered. The precise application of this factor to the facts of this case is somewhat unclear, but we may, for the sake of argument, conclude that the relationship is centered in Texas, given that Weber has been appointed as receiver for marital property by a Texas court, and that Ms. Kohlrautz and Weber contend that Oilmen's two Nevada properties are part of the marital estate.

**[15]** Even on the assumption that this dispute satisfies the fourth factor of the *Motenko* test, we must apply Nevada law. *Motenko* requires that at least two of the four factors be satisfied, and this dispute satisfies at most only one of them.

Under *Motenko*, Texas therefore does not have an "overwhelming interest" in the application of its law to this case.

We are reinforced in our conclusion that Nevada official immunity law applies by a pre-*Motenko* decision. In *Mianecki v. Wisconsin Second Judicial Dist. Court*, 658 P.2d 422, 423 (Nev. 1983), according to the allegations of the complaint, Blake, a convicted sex offender, was placed on probation by a Wisconsin court for first degree sexual assault of a young boy in Wisconsin. During his probationary period, Blake was permitted by the Wisconsin Division of Corrections to relocate to Nevada. Shortly after arriving in Nevada, Blake moved into the home of the Averetts, who were not informed of his criminal history. Blake subsequently victimized the Averetts' minor son. The Averetts brought suit in Nevada state court against the State of Wisconsin and Mianecki, the Wisconsin official who approved Blake's travel to Nevada. Both Wisconsin and Mianecki moved to quash the complaint based on a defense of sovereign immunity. *Id.*

The Nevada Supreme Court had little hesitation in denying the motion. "We . . . hold that where the injured party is a citizen of this state, injured in this state and sues in the courts of this state, there is no immunity, by law or as a matter of comity, covering a sister state activities in this state." *Id.* at 423-24. Rejecting Wisconsin's comity argument, the court wrote, "we believe greater weight is to be accorded Nevada's interest in protecting its citizens from injurious operational acts committed within its borders by employees of sister states, than Wisconsin's policy favoring governmental immunity." *Id.* at 425.

We recognize that there are differences between *Mianecki* and this case. For example, the plaintiffs in *Mianecki* were citizens of Nevada. Oilmen, by contrast, is a Liberian corporation merely owning property in Nevada. Further, the immunity at issue in *Mianecki* was sovereign rather than official immunity. Nonetheless, we read *Mianecki* as a statement

that the immunity laws of other states are disregarded by Nevada courts when important Nevada interests are at stake. In this case, such interests would include the protection of owners of property located in Nevada, as well as enforcement of Nevada law forbidding abuse of process by means of the Nevada judicial system. *See, e.g.*, *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002) ("Abuse of process can arise from both civil and criminal proceedings.").

Finally, we note the unpublished decision of the Nevada Supreme Court described in *Franchise Tax Board of California v. Hyatt*, 538 U.S. 488 (2003). Plaintiff Hyatt filed suit in Nevada state court alleging that the California taxing authority, the Franchise Tax Board, had committed various torts under Nevada law in assessing allegedly unpaid California income tax against him. *Id.* at 491. The Nevada Supreme Court declined to honor the Franchise Tax Board's defense of sovereign immunity. *Id.* at 492. As described by the United States Supreme Court, the Nevada court

> held that "affording [CFTB] statutory immunity . . . does contravene Nevada's policies and interests in this case." . . . Because Nevada "does not allow its agencies to claim immunity for discretionary acts taken in bad faith, or for intentional torts committed in the course and scope of employment," the [Nevada] Court held that "Nevada's interest in protecting its citizens from injurious intentional torts and bad faith acts committed by sister states' government employees" should be accorded greater weight "than California's policy favoring complete immunity for its taxation agency."

*Id.* at 493-94 (internal quotations indicate language taken from the Nevada Supreme Court's unpublished opinion). The United States Supreme Court in *Hyatt* held that the Full Faith and Credit Clause of the United States Constitution did not require Nevada to honor the Franchise Tax Board's sovereign

immunity defense. *Id.* at 499. More to the immediate point, *Hyatt* provides one more example of the Nevada Supreme Court declining to honor an immunity defense based on the law of another state.

**[16]** Based on *Motenko*, *Mianecki*, and on the Nevada Supreme Court's decision described in *Hyatt*, we conclude that a Nevada court would apply Nevada rather than Texas law of official immunity for court-appointed receivers.

## C.   Nevada's Official Immunity Law

The controlling Nevada case on the scope of official immunity for court-appointed receivers is *Anes v. Crown Partnership*, 932 P.2d 1067 (Nev. 1997). A court-appointed receiver, Crown Partnership, was given the task of increasing occupancy in an office building after a primary partner of the owner filed for bankruptcy. One of the building's tenants filed suit against Crown Partnership for breach of contract, breach of the covenant of quiet enjoyment, and breach of the duty of good faith and fair dealing. Crown Partnership moved for summary judgment on a number of claims, including the defense of official immunity as a court-appointed receiver.

**[17]** The Nevada Supreme Court noted that under Nevada law "[g]enerally, a receiver cannot be sued without leave of the appointing court." *Id.* at 1070. "However, where the receiver acts beyond the scope of its court-derived authority such that it may be sued as an individual, leave of the court is unnecessary." *Id.* The court continued:

> A receiver appointed by the court acts as an officer of the court. A receiver who faithfully and carefully carries out the orders of the appointing judge shares the judge's judicial immunity. . . .
>
> However, the receiver must not exceed the limits of the authority granted by the court and must act for

the benefit of all persons interested in the property. Indeed, a receiver may be personally liable if he or she acts outside the authority granted by the court.

*Id.* at 1071 (internal quotation marks and citations omitted).

The scope of Weber's authority is, of course, determined by the authority granted to him by the Texas court. Restatement (Second) Conflict of Laws § 403 cmt. a (1971). We will not engage in an extended analysis of the precise scope of that authority, or of the evidence before the district court tending to show that he exceeded it. It is enough to affirm the district court's denial of Weber's motion for summary judgment to point out the following.

The authority given by the Texas court to Weber, and to his predecessor as receiver, was the authority "to manage, control, and preserve the property as the Receiver sees fit in the Receiver's sole and undivided discretion, upon such terms and conditions that may be approved by the Court." The receiver was required to "[act] faithfully and discharge the Receiver's duties as Receiver in this action and obey the orders of this Court." In his Responses to Oilmen's Requests for Admissions in the district court, Weber stated that as receiver he is "obligated to discharge the duties of [his] office of Receiver with the utmost impartiality and without bias or prejudice."

[18] The evidence in the record, when viewed in the light most favorable to Oilmen, supports Oilmen's claims that Weber has acted outside the scope of his authority as receiver. For example, Oilmen has presented evidence that Weber has acted partially toward Ms. Kohlrautz by providing legal advice and accepting loans and advances from her. Oilmen has also presented evidence that Weber made misrepresentations to the court in order to bring Oilmen into the litigation. Even assuming that the Texas court had provided Weber with authority to pursue Oilmen, such evidence of Weber's partial-

ity and misrepresentation, when viewed in the light most favorable to Oilmen, is a sufficient basis for denying summary judgment to Weber on his defense of official immunity.

## IV.   Conclusion

**[19]** We hold that Weber, as a court-appointed receiver, may assert official immunity as a defense in accordance with Nevada law. Applying that law, we AFFIRM the decision of the district court denying Weber's motion for summary judgment.

**AFFIRMED.**