P.I.&I. MOTOR EXPRESS, INC./FOR U, LLC, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*, (Tony Faulkenberry, Appellee).

Fifth District (Illinois Workers' Compensation Commission Division)
No. 5—05—0450WC

Opinion filed September 21, 2006.

Knapp, Ohl & Green, of Edwardsville (L. David Green and Elizabeth A. Bradley, of counsel), for appellant.

Bonifield & Rosenstengel, of Belleville (Jerald J. Bonifield and Jon E. Rosenstengel, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

P.I.&I. Motor Express, Inc./For U, LLC (collectively referred to as the Employer), appeals from an order of the circuit court of St. Clair County that confirmed a decision of the Illinois Industrial Commission (Commission), now known as the Illinois Workers' Compensation Commission (see 820 ILCS 305/13 (West 2004)), awarding Tony Faulkenberry (hereinafter referred to as the claimant) benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)). For the reasons that follow, we affirm and remand this matter to the Commission for further proceedings.

The following factual recitation is taken from the evidence admitted during the arbitration hearing.

The claimant admitted that, prior to the events giving rise to the instant claim, he signed a form by which he agreed to be bound by the worker's compensation laws of the State of Ohio and that the Ohio statute would be the exclusive remedy for any injuries arising out of his employment. The form listed For U, Inc. (For U), as the claimant's employer and stated that the contract of hire had been entered into in the State of Illinois.

The claimant testified that he was employed as a truck driver for P.I.&I. Motor Express, Inc. (P.I.&I.), and that his duties included the

operation of a flatbed trailer hauling steel and wood. According to the claimant, he received instructions from P.I.&I. as to which trucks to drive and which routes to take. Although he acknowledged receiving his paychecks from For U, the claimant maintained that he was an employee of P.I.&I.

On May 16, 2001, while driving his truck on a divided interstate highway in Pennsylvania, another truck struck the claimant's trailer, forcing him off the road. The claimant was taken to a nearby hospital where he complained of neck pain. He testified that he had never suffered pain in his neck, back or legs prior to the accident.

The claimant returned home to East St. Louis, Illinois, and was sent for treatment at West Pine Medical Center. On May 23, 2001, seven days after the accident, Dr. Ivy Benjamin initially examined the claimant. Dr. Benjamin diagnosed a cervical sprain/strain and lumbosacral sprain/strain at that time as well as on three subsequent follow-up visits in June and July of 2001. The claimant's complaints of pain in his neck were treated with physical therapy and massages. The claimant's neck pain continued and he also complained of pain in his lower back which began approximately one week after the accident.

On September 10, 2001, the claimant was examined by Dr. Jose Ramon, his wife's physician. At that time, the claimant reported pain in his neck and back as well as pain and numbness in his legs. Dr. Ramon ordered several diagnostic tests and referred the claimant to Dr. William Sprich.

Dr. William Sprich, a board-certified neurosurgeon, testified that he examined the claimant on September 21, 2001. Dr. Sprich stated that his examination on that date revealed that the claimant had less than 20% of forward flexion, he was unable to extend his neck at all or to bend his neck backwards, and his right/left bending was compromised at 75% of normal. Dr. Sprich reviewed an MRI scan of the claimant's spine and questioned whether he might have some injury at the C5-6 level.

The claimant next saw Dr. Sprich on October 1, 2001, complaining of developing lower-back pain. Dr. Sprich reviewed a scan of the claimant's lumbar spine and noted degenerative disc changes at the L4-5 level and some collapse at the L5-S1 level.

The claimant underwent a diagnostic lumbar and cervical myelogram and CT scan on December 6, 2001. Dr. Sprich observed a small, posterior central, broad-based C5-6 disc protrusion with mild thecal compression. The tests also revealed a small broad-based left paramedian L3 disc protrusion with mild thecal sac impression and a generalized posterior L4-5 bulge also with thecal compression. Dr.

Sprich testified that he diagnosed a combination of disc injury in the cervical spine at C5-6 as well as a violation of the annulus at the L3-4 or L4-5 level.

At the request of the Employer, the claimant was examined on January 18, 2002, by Dr. Frank Petkovich, an orthopedic surgeon. At that time, the claimant complained of pain in his lower back and left gluteal and thigh area. Dr. Petkovich observed a slightly decreased range of motion of the lumbosacral spine, but could not find any muscle spasm in the paraspinous area. He reviewed X rays taken on June 19, 2001, approximately one month after the accident, a cervical myelogram, lumbar myelogram, and a postmyelogram CT scan which showed overall good structural alignment but revealed some mild bulge at L3-4 and L4-5. He noted the absence of a herniation and nerve root compression on the films, leading him to conclude that the claimant's pain was musculature and ligamentous in nature. Dr. Petkovich diagnosed a soft tissue cervical strain and a muscular and thoracic strain which had resolved, and a muscular lumbar strain which had essentially resolved except for some mild residual discomfort. He recommended that the claimant continue a vigorous physical therapy program in lieu of surgery.

The claimant unsuccessfully underwent a regimen of pain medications and a series of epidural blocks to control his neck and back pain. Dr. Sprich next recommended a discogram which revealed a full thickness tear with extravasation in the anterior epidural space consistent with a lateral tear, which Dr. Sprich believed was the cause of the claimant's left leg radiculopathy. Thereafter, Dr. Sprich recommended and proceeded with surgery on April 19, 2002, to fuse the injured disc at the L4-5 level. The claimant reported that his leg pains were alleviated by the surgery, but he continued to complain of occasional pain in his lower back and neck.

Dr. Sprich last examined the claimant on September 4, 2002. He opined that, as of that examination, the claimant continued to be temporarily totally disabled from his work as a truck driver. He added that the claimant would continue to be temporarily totally disabled until his cervical condition and L5-S1 lumbar condition were repaired.

Dr. Sprich opined that the claimant's cervical and lumbar conditions were consistent with, and causally related to, his May 16, 2001, motor vehicle accident. Although there was evidence that the claimant had some arthritis at the L4-5 and L5-S1 level, Dr. Sprich believed that the claimant's injury was causally related to a combination of the annular tear and the arthritis. Dr. Sprich opined that the annular tear was recent because no calcification or spur formation was present. Dr. Sprich also based his opinion on the fact that the claimant had had no complaints of back or neck pain prior to the accident.

At his deposition, Dr. Petkovich testified that he was aware that the claimant had opted to proceed with surgery after he had examined him. He did not believe that the claimant would achieve long-term benefits from surgical intervention, but admitted that he had not spoken to the claimant since his surgery. Dr. Petkovich also stated that the claimant should have been able to return to work as a truck driver 12 months after his surgery.

Dr. Petkovich opined that the claimant's disc bulging was due to the degenerative changes that occur with aging. However, he admitted that a degenerative condition could have existed, with no subluxation, and that the claimant's accident could have caused the actual displacement or subluxation. Overall, Dr. Petkovich stated his belief that the claimant's disc bulging was a preexisting condition and not related to the May 2001 accident.

At the arbitration hearing, the claimant admitted that the name "For U, LLC" appeared on his paychecks. He also confirmed that he had designated "For U, LLC" as the worker's compensation carrier on a patient information form at a physician's office. Nevertheless, he maintained that P.I.&I. was his employer. Nothing in the record speaks to the relationship, if any, between For U and P.I.&I.

The claimant also acknowledged that he filed a claim in the State of Ohio, requesting worker's compensation benefits by reason of the injuries he sustained as a result of the May 16, 2001, accident. The claimant testified that he hired an Ohio attorney to help him procure benefits in that state and admitted that he had received payments pursuant to Ohio's worker's compensation statute. The claimant's employer is listed as For U, LLC, in claim status forms from the Ohio Bureau of Workers' Compensation that were received in evidence. Records of the Ohio Bureau of Workers' Compensation that were received in evidence also reflect that the claimant received $8,466.64 in "indemnity" benefits and $12,666.64 in medical benefits.

The claimant filed the instant action on November 5, 2001, seeking benefits pursuant to the Illinois Workers' Compensation Act for injuries he alleged that he received as a result of the May 16, 2001, accident. In his application for adjustment of claim, the claimant listed P.I.&I. as his employer.

On November 19, 2001, the claimant moved to amend his Ohio worker's compensation claim to request additional benefits for treatment of the herniated disc diagnosed by Dr. Sprich. The record reflects that the Ohio Bureau of Workers' Compensation referred the matter to an independent evaluator who concluded that the claimant was not suffering from a disc herniation at C5-6, L3-4 or L4-5. In a letter dated January 10, 2002, the administrator of the Ohio Bureau of Work-

ers' Compensation objected to the claimant's request for additional compensation for his cervical and lumbar conditions, and the matter was set for a hearing before the Ohio Industrial Commission. The record fails to indicate whether the Ohio Industrial Commission ever rendered a final decision in the matter.

On January 8, 2002, the claimant filed an amended application for adjustment of claim with the Commission in the instant matter, listing his employer as For U. Following a hearing on December 5, 2002, which was held pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2002)), the arbitrator issued a decision in which he found that, on May 16, 2001, "P.I.&I. Express Inc./For U, LLC" was operating under and subject to the provisions of the Act and that, on that date, an employer-employee relationship existed between the claimant and the designated respondent, P.I.&I. Express Inc./For U, LLC. Although the Employer argued that the claimant's exclusive remedy was pursuant to Ohio's worker's compensation statute, the arbitrator, nevertheless, awarded the claimant benefits under the Act. The arbitrator found that the form executed by the claimant electing the Ohio worker's compensation statute as his exclusive remedy only recited that it pertained to claims against "For U, LLC," and did not mention P.I.&I. Additionally, the arbitrator found that no evidence was offered explaining the relationship between P.I.&I. and For U. Going to the merits of the claim, the arbitrator found that the claimant's condition of ill-being in both his cervical spine and lumbar spine was causally related to his May 16, 2001, accident, which arose out of and in the scope of his employment. The arbitrator awarded the claimant temporary total disability (TTD) benefits from May 17, 2001, through December 5, 2002, and $21,746.62 for necessary medical expenses.

■ The Employer filed a petition for review of the arbitrator's decision before the Commission. In a unanimous decision, the Commission: corrected a computational error in the arbitrator's decision and awarded the claimant $21,546.74 in medical expenses; affirmed and adopted the arbitrator's decision in all other respects; and granted the Employer a credit for all amounts paid to, or on behalf of, the claimant as a consequence of the May 16, 2001, accident. The caption of the Commission's decision lists "P.I.&I. Express Inc./For U, LLC" as the respondent. Additionally, the Commission remanded the matter to the arbitrator for further proceedings pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 399 N.E.2d 1322 (1980).

The Employer filed a petition for judicial review of the Commission's decision in the circuit court of St. Clair County. The circuit court confirmed the Commission's decision, and this appeal followed.

Relying upon the form signed by the claimant, electing Ohio's

worker's compensation statute as his exclusive remedy for a work-related injury, the Employer argues that the claimant was not entitled to benefits under the Act. The Employer contends that section 4123.54 of the Ohio Revised Code (Ohio Code) (Ohio Rev. Code Ann. §4123.54 (West 2002)) and the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, §1) require that Illinois deny the claimant benefits. We disagree.

Section 4123.54(H) of the Ohio Code, in relevant part, provides:

> "Whenever, with respect to an employee of an employer who is subject to and has complied with this chapter, there is possibility of conflict with respect to the application of workers' compensation laws because the contract of employment is entered into and all or some portion of the work is or is to be performed in a state or states other than Ohio, the employer and the employee may agree to be bound by the laws of this state [Ohio] or by the laws of some other state in which all or some portion of the work of the employee is to be performed. *** *If the agreement is to be bound by the laws of this state [Ohio] and the employer has complied with this chapter, then the employee is entitled to compensation and benefits regardless of where the injury occurs or the disease is contracted and the rights of the employee and the employee's dependents under the laws of this state [Ohio] are the exclusive remedy against the employer on account of injury, disease, or death in the course of and arising out of the employee's employment ***.*" (Emphasis added.) Ohio Rev. Code Ann. §4123.54(H) (West 2002).

There is no doubt that the claimant in this case signed an agreement authorized by section 4123.54 of the Ohio statute and agreed to be bound by Ohio's worker's compensation statute. Nevertheless, we do not believe that the Commission was obligated to enforce either the agreement or section 4123.54 of the Ohio statute and deny the claimant benefits under the Act.

Generally, competent parties are free to contract with one another. *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 215, 676 N.E.2d 1295 (1997). However, an agreement will not be enforced if it is contrary to the public policy of the state. *In re M.M.D.*, 213 Ill. 2d 105, 114, 820 N.E.2d 392 (2004). Whether an agreement is contrary to public policy depends on the facts and circumstances of each particular case. *Liccardi v. Stolt Terminals, Inc.*, 178 Ill. 2d 540, 549, 687 N.E.2d 968 (1997).

Section 23 of the Act provides that "[n]o employee, personal representative, or beneficiary shall have power to waive any of the provisions of this Act in regard to the amount of compensation which may be payable to such employee, personal representative or beneficiary hereunder except after approval by the Commission." 820

ILCS 305/23 (West 2002). This statutory provision is an acknowledgment that a worker's compensation claim is a matter of public interest and not a private matter between the employer and employee. Section 23 prohibits an employer and employee from entering into an agreement depriving the Commission of jurisdiction. *Hartford Accident & Indemnity Co. v. Industrial Comm'n*, 320 Ill. 544, 546, 151 N.E. 495 (1926). We believe, therefore, that any agreement between an employer and an employee which purports to divest the Commission of jurisdiction where it otherwise exists is contrary to the public policy of this state and is, therefore, unenforceable. See 9 Larson's Workers' Compensation Law §143.07[1], at 143-33 (2004).

In this case, the very document upon which the Employer relies states that the claimant's contract of hire was entered into in the State of Illinois. As the state where the employment contract was entered into, Illinois has a legitimate concern over the employer-employee relationship and may apply its own worker's compensation statute even though the claimant's injury occurred elsewhere. See *Industrial Comm'n of Wisconsin v. McCartin*, 330 U.S. 622, 626, 91 L. Ed. 1140, 1142-43, 67 S. Ct. 886, 887-88 (1947); *Alaska Packers Ass'n v. Industrial Accident Comm'n*, 294 U.S. 532, 542-43, 79 L. Ed. 1044, 1049-50, 55 S. Ct. 518, 520-21 (1935). Recently, our supreme court has reaffirmed its interpretation of section 1(b)(2) of the Act (820 ILCS 305/1(b)(2) (West 2002)), holding that the Commission has jurisdiction to award compensation under the Act for a work-related injury to an employee whose contract of hire was entered into in Illinois, regardless of where the accident giving rise to that injury might occur. *Mahoney v. Industrial Comm'n*, 218 Ill. 2d 358, 374, 843 N.E.2d 317 (2006).

The Commission's jurisdiction to award benefits under the Act for the injuries sustained by the claimant on May 16, 2001, attached by reason of his contract of hire having been entered into in Illinois. Any attempt on the part of the claimant to divest the Commission of jurisdiction by means of a postemployment agreement violates the provisions of section 23 of the Act and is, therefore, contrary to the state's public policy. For this reason, the very agreement upon which the Employer rests its argument that the claimant's exclusive remedy lies under the Ohio worker's compensation statute is unenforceable. We arrive at this conclusion notwithstanding the provisions of section 4123.54 of the Ohio statute.

Under the full faith and credit clause of the United States Constitution, each state must give full faith and credit to "the public Acts, Records, and judicial Proceedings of every other State." U.S. Const., art. IV, §1. However, the full faith and credit clause does not

compel a state to apply the conflicting statute of another state rather than its own statute that deals with a subject matter which it is competent to legislate. *Franchise Tax Board of California v. Hyatt*, 538 U.S. 488, 494, 155 L. Ed. 2d 702, 709-10, 123 S. Ct. 1683, 1687 (2003). Clearly, section 23 of the Act is in conflict with section 4123.54 of the Ohio statute. Section 23 prevents an employee from waiving Illinois jurisdiction (see 820 ILCS 305/23 (West 2002); *Hartford Accident & Indemnity Co.*, 320 Ill. at 546); whereas, section 4123.54 of the Ohio statute provides for an agreement between an employer and employee requiring the employee's worker's compensation claims to be brought in Ohio, to the exclusion of all other jurisdictions (see Ohio Rev. Code Ann. §4123.54(H) (West 2002)). We conclude, therefore, that the full faith and credit clause does not require Illinois to give effect to a conflicting provision of the Ohio statute in preference to the provisions of our own worker's compensation act. See *Alaska Packers Ass'n*, 294 U.S. at 550, 79 L. Ed. at 1053, 55 S. Ct. at 525 (holding that California, the state in which the employment contract was entered, was not required to give full faith and credit to a conflicting Alaska statute, the state where the injury occurred). Consequently, the Commission correctly declined to apply the Ohio statute and enforce the claimant's agreement to look to the Ohio worker's compensation statute as his exclusive remedy.

In support of its exclusive remedy argument, the Employer also seems to argue that the "unmistakable language" of section 4123.54 of the Ohio statute precludes recovery in another jurisdiction when benefits are originally obtained in Ohio. The Employer cites to the Supreme Court's holding in *McCartin* for the proposition that a second worker's compensation claim cannot be maintained in another state for the same injury if an employee has first obtained compensation under a state's worker's compensation statute which contains "unmistakable language" that the statute is designed to preclude a recovery in any other state. *McCartin*, 330 U.S. at 627-28, 91 L. Ed. at 1143-44, 67 S. Ct. at 888-89; see also *Gulf Interstate Geophysical/Gulf Interstate Piping v. Industrial Comm'n*, 198 Ill. App. 3d 307, 312, 555 N.E.2d 989 (1990). Suffice it to say, however, that the terms of section 4123.54 of the Ohio statute do not preclude additional recovery in another state if an injured employee first obtains benefits under the Ohio worker's compensation statute. The statute merely permits an employee under certain specified circumstances to enter into an agreement making benefits under the Ohio statute his exclusive remedy for a work-related injury. Contrary to the Employer's assertion, the Ohio statute does not contain the "unmistakable language" required by *McCartin*.

Alternatively, the Employer argues that, by pursuing a worker's compensation claim in Ohio, the claimant has made an election of remedies, barring further recovery in Illinois. Again, we disagree.

Generally, receipt of worker's compensation benefits in one state does not bar a subsequent award in a second state with concurrent jurisdiction. See *McCartin*, 330 U.S. at 628, 91 L. Ed. at 1144, 67 S. Ct. at 889; *Long-Airdox Co. v. Industrial Comm'n*, 128 Ill. App. 3d 334, 338, 470 N.E.2d 1307 (1984) (allowing a claimant to recover in Illinois after previously receiving benefits in West Virginia). However, a claimant will be deemed to have elected his remedy in a particular jurisdiction where: (1) double compensation is threatened; (2) the employer has been misled by the claimant's conduct; or (3) *res judicata* applies. *Goldblatt Brothers, Inc. v. Industrial Comm'n*, 86 Ill. 2d 141, 146, 427 N.E.2d 118 (1981).

The Employer has made no argument that double recovery is threatened in this case. Rather, it argues both that it has been misled by the claimant's conduct in first seeking and receiving benefits in Ohio and then filing a claim for the same injury in Illinois and that the doctrine of *res judicata* bars his Illinois claim.

The Employer contends that the claimant's filing of a second claim in Illinois in violation of his exclusive remedy agreement has somehow misled it. However, the record is void of any evidence supporting the assertion that the Employer was misled or that it in any way changed its position in reliance upon the claimant having originally pursued benefits in Ohio.

Similarly, the Employer's *res judicata* defense also fails for want of proof. Under the doctrine of *res judicata*, a final judgment rendered on the merits is conclusive as to the rights of the parties and their privies and constitutes an absolute bar to a subsequent action involving the same claim. *J&R Carrozza Plumbing Co. v. Industrial Comm'n*, 307 Ill. App. 3d 220, 223, 717 N.E.2d 438 (1999). *Res judicata* is an affirmative defense, and, therefore, the Employer had the burden of proving that the doctrine applied. See *American National Bank & Trust Co. of Chicago v. Village of Libertyville*, 269 Ill. App. 3d 400, 404, 645 N.E.2d 1013 (1995).

The Employer asserts that the Ohio Bureau of Workers' Compensation has already denied the claimant's request for compensation for herniated discs at C5-6 and L3-4, the same injury for which the Commission awarded benefits in the instant case. However, nothing in the record supports the contention that a final decision was entered in Ohio. Although the record contains a letter from the administrator of the Ohio Bureau of Workers' Compensation objecting to the claimant's request for additional compensation for herniated discs at C5-6 and

L3-4 and setting the matter for a hearing before the Ohio Industrial Commission, the record does not contain any evidence of a final decision in the State of Ohio. Without evidence that a final judgment has been entered in Ohio, the Employer failed to prove that the claimant's Illinois worker's compensation claim is barred by the doctrine of *res judicata*.

■ Finally, we turn to the Employer's argument that the Commission's finding that the condition of ill-being in both the claimant's cervical spine and lumbar spine was causally related to his May 16, 2001, accident is against the manifest weight of the evidence. In support of its contention in this regard, the Employer relies upon the opinions of Dr. Petkovich and the fact that Dr. Sprich was the only physician treating the claimant who diagnosed a herniated disc. The Employer also notes that Dr. Sprich's diagnosis of herniated discs in the lumbar spine and cervical spine was not rendered until seven months after the claimant's accident.

Whether a causal relationship exists between a claimant's work-related accident and his current condition of ill-being is a question of fact to be resolved by the Commission. *Cassens Transport Co. v. Industrial Comm'n*, 262 Ill. App. 3d 324, 331, 633 N.E.2d 1344 (1994). In resolving questions of fact, it is the function of the Commission to judge the credibility of the witnesses and resolve conflicting medical evidence. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253, 403 N.E.2d 221 (1980). The Commission's resolution of factual issues will not be disturbed on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44, 509 N.E.2d 1005 (1987). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894 (1992).

In this case, the arbitrator, whose decision was adopted by the Commission, based his findings on the causation opinion of Dr. Sprich, whom he found credible. Dr. Sprich opined that the disc injuries to the claimant's cervical spine and lumbar spine were causally related to the May 16, 2001, motor vehicle accident. He noted that the disc protrusions at L4-5 and C5-6 were consistent with an injury in a motor vehicle accident. Dr. Sprich observed that the annular tear at the L4-5 level was recent, with no evidence of calcification or spur formation. In forming his opinion on causation, Dr. Sprich also relied on the fact that the claimant had not complained of neck or back pain prior to the May 16, 2001, accident.

Where, as in this case, the Commission's decision is supported by competent evidence, its finding of fact is not against the manifest

weight of the evidence. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450, 440 N.E.2d 90 (1982). Based upon Dr. Sprich's testimony, we are unable to find that the Commission's conclusion that the condition of ill-being in both the claimant's cervical spine and lumbar spine is causally related to his May 16, 2001, motor vehicle accident is against the manifest weight of the evidence.

For the foregoing reasons, we affirm the judgment of the circuit court which confirmed the Commission's decision and remand this matter to the Commission for further proceedings.

Affirmed and remanded to the Workers' Compensation Commission.

McCULLOUGH, P.J., and CALLUM, HOLDRIDGE, and GOLDENHERSH, JJ., concur.